EARLE v. HUMPHREY.

1. INSOLVENT BANK—TRANSFER OF STOCK—BILL FOR RESCISSION—RECEIVER AS PARTY—DEMURRER.

A bill for rescission of a contract whereby complainant became the purchaser of stock in a bank since insolvent, which asks release from the statutory liability to depositors growing out of such insolvency, is demurrable, where it does not appear that the receiver of the bank was made a party by authority of the court appointing him, or that complainant was unable to obtain such authority.

2. SAME—UNEXCUSED LACHES.

The right to maintain a bill for rescission of a contract whereby complainant became the purchaser of stock in a bank since insolvent, for misrepresentations as to the value of the stock, is lost by laches, where complainant, though immediately made a director in the bank, waits two and one-half years after his election as director, and nearly a year after the bank becomes insolvent, before seeking rescission, without excuse for his delay, except his claimed reliance upon untruthful statements of his fellow officers.

Appeal from Ionia; Davis, J.   Submitted June 8, 1899.
Decided October 17, 1899.

Bill by J. Milton Earle against Henry Humphrey and
others to rescind a contract for an exchange of property.
From an order overruling a demurrer to the bill, defend-
ants appeal.   Reversed.

*George E. & M. A. Nichols*, for complainant.

*Russell C. Ostrander*, for defendants.

MOORE, J.   The following statement is taken from the
brief of the solicitors for complainant: The bill of com-
plaint in this cause was filed in the Ionia county circuit
court, in chancery, in August, 1897.   The bill alleges
that complainant, prior to the 26th day of January, 1895,
was a resident of Belding, Mich., and was the owner of
certain property, described in the bill as "Parcel 1," which
was incumbered for $2,500, and was also the owner of
parcel 2, described in the bill of complaint; that his wife,
Mary C. Earle, was the owner of certain other property
described in the bill, known as "Parcel 3;" that about
that time complainant became interested in the Lansing
Pants & Overall Company, and moved to the city of Lan-
sing; that Henry Humphrey was the owner of 78 shares
of stock in the Ingham County Savings Bank; that his
wife, Martha A. Humphrey, was the owner of a certain
house and lot in the city of Lansing; and that the title of
the bank stock stood in Henry Humphrey, and the title
of the land in his wife.   The bill alleges that Humphrey
approached complainant, and made a proposition for an
exchange of the house and lot owned by his wife and
the bank stock owned by himself for the property of com-
plainant and his wife, also an insurance business that
complainant owned at Belding, Mich., valued at $2,500;
that Humphrey represented to complainant that the
bank stock was worth from $100 to $125 per share,
—that the bank had a paid-up capital of $100,000, and

a surplus of $50,000; that Humphrey referred complainant to John A. May, then cashier of said bank, to vouch for the truth of the statement; that May substantially reiterated the statement in regard to the value of the stock as made by Humphrey; that complainant was entirely ignorant of the value of the stock, and so informed Humphrey and May; that Humphrey had been cashier of the bank prior to its reorganization, and knew all about the value of the stock; also, that May knew all about its value; that Humphrey was owing the bank on his promissory note $4,000. The bill alleges that the proposition made by Humphrey to complainant for the deal was, in substance, as follows: That Humphrey would transfer his bank stock to complainant; that his wife, Martha A. Humphrey, would transfer to complainant or his wife the real estate in Lansing,—making a total consideration of $17,250; that complainant was to transfer parcel 1 of his property in Belding at a consideration of $7,000, and parcel 2 at a consideration of $3,500, and parcel 3 at a consideration of $3,000; also, that complainant was to turn over his insurance business to Humphrey, and assume the payment of the $4,000 note owing by Humphrey to the bank; that complainant, believing the statements as to the value of the bank stock, accepted the proposition; that, in pursuance of the arrangement, parcels 1 and 2 in Belding were transferred to Humphrey by complainant and his wife; that Mary C. Earle, wife of complainant, transferred parcel 3 to Humphrey and his wife; that Martha A. Humphrey conveyed the Lansing real estate to Mary C. Earle on the same date; that Humphrey caused a new issue of stock to be issued to complainant in lieu of the stock held by him in the bank, and complainant gave his own note for $4,000 to the bank, to substitute that of Humphrey, and transferred the insurance business to him; that complainant also assigned $4,000 of the Lansing Pants & Overall Company stock to the bank as collateral to his note of $4,000.

The bill further alleges that, while this transaction was

going on, the bank well knew of the representations made
by Humphrey and May as to the value of its stock; that
the bank suspended business August 13, 1896, and John
A. May was appointed receiver; that the stock, at the time
the representations were made, was wholly and entirely
worthless; that Humphrey and May knew that to be a
fact, and that they were made with the purpose of de-
frauding complainant; that May, on July 22, 1897, filed a
petition in the circuit court for the county of Ingham, set-
ting forth that there were not sufficient assets to pay the
debts of the bank, and asking the court for authority to
collect 65 per cent. of the stockholders on their stock sub-
scriptions; that, although complainant was elected director
after purchasing the stock, he never had anything to do
with the bank, and knew nothing about its affairs or the
value of the stock, excepting as he was informed by the
other directors and officers; that, even after the appoint-
ment of the receiver, complainant, still relying on the in-
formation of the directors and other officers, was led to
believe that the paper held by the bank would be paid by
the makers thereof, and all of the debts of the bank would
be paid, and the stock would be worth at least 50 cents on
the dollar; and that, relying upon such representations,
complainant took no steps to investigate the real condition
of the bank, or to repudiate his purchase of the stock, and
was thereby lulled into security until the filing of the peti-
tion of the receiver on the 22d day of July, 1897, and that,
as a matter of fact, complainant filed his bill on the 7th of
August, in about two weeks after his discovery of the
fraud.

The bill further alleges that complainant's wife, Mary
C. Earle, died in 1897, but before her death she had con-
veyed the real estate in Lansing, which had been deeded
to her by Martha A. Humphrey, to Helen M. Earle; that
on the 3d day of August, 1897, after complainant dis-
covered the worthlessness of the stock, he immediately
repudiated the whole transaction, and tendered to Martha
A. Humphrey a deed of the Lansing property from Helen

M. Earle, and also tendered to Henry Humphrey all of the stock certificates that complainant had received from Henry Humphrey in the Ingham County Savings Bank, and demanded of Humphrey and his wife the deeds of parcels 1, 2, and 3 of the Belding property, and also demanded that Humphrey obtain the note given by complainant to the bank, and deliver it to him, and also a bond to indemnify complainant from all loss by reason of the receivership of said bank, and also that Humphrey transfer the insurance business at Belding, or turn over the proceeds, to him, all of which was refused by the Humphreys. The bill further alleges that Humphrey has sold the insurance business, and paid the mortgage on parcel 1 of the Belding property; that Humphrey has received divers large profits from the Belding property, which should be accounted for; also, that complainant is willing to account for any profits received from the property transferred to him or Mary C. Earle.

The bill asked that the bank be made a party, by its receiver, John A. May, and made Henry Humphrey and Martha A. Humphrey parties defendant. The bill, afterwards being amended, made Helen M. Earle a party defendant. The bill prays that the Humphreys may be decreed to reconvey all of the Belding property transferred to them, either to complainant or to the heirs of Mary C. Earle; that complainant be released from all obligations on account of his note to the Ingham County Savings Bank, or the payment of any statutory liability; that Humphrey be decreed to give a bond to complainant against all costs and damages that complainant may have suffered or may suffer by reason of the fraudulent transfer of the bank stock; that Humphrey be required to execute to the bank a new note for $4,000; that Humphrey be required to account for the insurance business or its value, and for the rents and profits of the real estate in Belding; that the bank be required to substitute the note of Humphrey for that of complainant, and also to look to Humphrey for the payment of the statutory liability; that

the receiver be enjoined from any proceedings against complainant by reason of said statutory liability or said promissory note, and be required to deliver the Lansing Pants & Overall Company stock to complainant, which was collateral to said note; or, in lieu thereof, if complete equity cannot be done, that the court affirm the sale and the damages be ascertained for complainant, and that the same be made a lien upon all the Belding property transferred to Humphrey; and prayer for general relief.

Demurrer was filed to the bill of complaint, which was overruled, and defendants appeal.

Solicitor for defendants makes three points in his brief, to wit:

1. That the court will not assume jurisdiction when it appears from the bill that the court has no jurisdiction of necessary parties.

2. That it ought not to assume jurisdiction where the remedy at law is adequate, and it is clear that a rescission of the contract cannot be effected by an order of the court.

3. That complainant is guilty of laches.

In our view of the case, it will be necessary to discuss only the first and last points made by the solicitor for defendants.

It appears by the bill that the Ingham County Savings Bank is insolvent, and is now in the hands of a receiver appointed by the Ingham county circuit court, in chancery. It also appears that said receiver has been directed by the court appointing him receiver to make an assessment against the shares of stock in controversy in this proceeding. It is apparent that said receiver is interested in this litigation, and is a necessary party thereto. It does not appear from the bill that the court appointing Mr. May receiver, and whose officer he is, has consented to the bringing of this suit against the receiver; and we have the anomalous condition of one court in chancery undertaking to exercise jurisdiction over an officer of another court in chancery, in a proceeding which may be of vital interest to the persons in whose place the receiver stands,

without having first obtained the consent of the court appointing the receiver, and having jurisdiction over the assets and interests which it is attempting to administer through its officer, the receiver. If this may be done by one court not appointing the receiver, it may be done by any number of courts, and would lead to an unseemly conflict. In *Citizens' Sav. Bank* v. *Ingham Circuit Judge*, 98 Mich. 173, this language is used:

"The court, by the appointment of the receiver, has taken into its own hands the subject-matter of the litigation over such claims as may be presented, and holds it pending the proceedings, and until the final disposition of all questions, legal or equitable, involved in the action. It would lead to most unseemly struggles if parties having claims against insolvent banks could apply to any other tribunal for such allowance, and thus compel the receiver, who must in all such cases be made the party defendant, to appear in other jurisdictions to defend against the action. To permit the receiver to be sued in any other court upon such claims would not be compatible with the dignity and authority of the court appointing him, and would lead to great inconvenience and cost to the estate which the receiver represents."

The application of this language to the case stated by the bill would seem to dispose of it according to the contention of the solicitor for the defendants. The question at issue here was directly passed upon in *Burk* v. *Foundry Co.*, 98 Mich. 614, where it is said:

"It is well settled that a receiver cannot be sued without leave of the court appointing him. *People* v. *Brooks*, 40 Mich. 333 (29 Am. Rep. 534); *Citizens' Sav. Bank* v. *Ingham Circuit Judge*, 98 Mich. 173. The bill in the present case fails to state that it is filed by leave of the court, and in such case, the defect being apparent on the face of the bill, the question may be raised by demurrer. Jenn. Ch. Prac. 59."

See, also, Beach, Rec. § 228; High, Rec. § 151; *Citizens' Commercial & Savings Bank* v. *Bay Circuit Judge*, 110 Mich. 633.

As to the last point raised by the solicitor: Mr. Hum-

phrey was a stockholder. According to the bill, the complainant, soon after he traded with Mr. Humphrey, became a director of the bank. This was in January, 1895, The bank was a going concern. Its business was managed by a board of directors. As a director, it was the duty of Mr. Earle, under the law, to acquaint himself with the affairs of the bank and its condition. Rev. Stat. U. S. §§ 5145, 5147; *Briggs* v. *Spaulding*, 141 U. S. 132. He had the means of knowledge directly at hand. It is not pretended he was prevented by any act of Mr. Humphrey, after the exchange of property was made, from investigating the affairs of the bank. He continued to be a director until the bank suspended because of its insolvency. This occurred in August, 1896, when a receiver was appointed. The complainant knew of the failure of the bank and of the appointment of a receiver, but he did not then take any step to rescind the contract he had made with Mr. Humphrey. It was not until an assessment was ordered against his stock, in the month of July following the appointment of the receiver, that it was sought to rescind the contract. This bill was not filed until more than 2½ years had elapsed after complainant became a director in the bank, and nearly a year after the bank had become insolvent. The only excuse offered for the laches is, not that Mr. Humphrey lulled him into inaction, but that he relied upon the untruthful statements of his fellow officers of the bank. It is difficult to imagine a more complete case of unexcused laches.

The demurrer is sustained, with costs of both courts.

GRANT, C. J., and LONG, J., concurred with MOORE, J.

HOOKER, J. I concur in the result reached by Mr. Justice MOORE, upon the ground that the receiver is a necessary party, under the prayer of the bill (1 Daniell, Ch. Prac. 282), and the bill fails to show that the complainant was authorized to make the receiver a party (*Burk* v. *Foundry Co.*, 98 Mich. 614), or that he was unable to obtain such authority (1 Daniell, Ch. Prac. 288;

*President, etc., of Michigan State Bank* v. *Hastings,* 1 Doug. 225 [41 Am. Dec. 549 ]; *Brewer* v. *Michigan Salt Ass'n,* 58 Mich. 351 ).

MONTGOMERY, J., concurred with HOOKER, J.