IN THE MATTER OF THE PETITION OF THE COMMISSIONER
OF THE MICHIGAN FINANCIAL INSTITUTIONS BUREAU FOR
THE APPOINTMENT OF A RECEIVER FOR THE PEOPLES STATE
BANK OF AUBURN

GENERAL CONFERENCE OF SEVENTH DAY ADVENTISTS v
SULLIVAN

1. BANKS AND BANKING—COMMISSIONER OF THE FINANCIAL INSTITU-
   TIONS BUREAU—STATUTORY POWERS—PUBLIC INTEREST.

   Banks are special institutions affected with an overriding public
   interest; therefore, there is a necessity for and validity in the
   broad powers granted to the Commissioner of the Financial
   Institutions Bureau (MCLA 487.302, 487.551).

2. BANKS AND BANKING—RECEIVERS—APPOINTING COURTS—AUTHORI-
   ZATION OF SUITS.

   A receiver of a bank cannot be sued without leave of the appoint-
   ing court.

3. BANKS AND BANKING—RECEIVERS—LITIGATION OF CLAIMS—COLLAT-
   ERAL ATTACK.

   An action instituted against the receiver of a bank by the bank's
   stockholders and directors to litigate claims of holders of "let-
   ters of credit" issued by the bank was properly transferred to
   the receivership action because the action by the stockholders
   and directors was in effect a collateral attack against the
   proceedings already pending, and because permitting such a
   course of action against a receiver would result in inconsistent
   results and further litigation in resolving such inconsistencies.

REFERENCES FOR POINTS IN HEADNOTES

[1] 10 Am Jur 2d, Banks § 10.
[2–5, 7] 10 Am Jur 2d, Banks §§ 304, 763–830.
[6] 10 Am Jur 2d, Banks § 765.
[8] 58 Am Jur, Witnesses §§ 71, 73.
[9, 10] 10 Am Jur 2d, Banks § 798.
   50 Am Jur 2d, Letters of Credit, and Credit Cards § 19.
[11] 10 Am Jur 2d, Banks § 303.
   65 Am Jur 2d, Receivers § 139.

4. BANKS AND BANKING—RECEIVERS—LITIGATION OF CLAIMS—JURY TRIAL.

Stockholders and directors of a bank in receivership who intervened as defendants to dispute the validity of claims against the bank based on "letters of credit" issued by the bank were not entitled to a jury trial in the receivership proceedings because a receivership proceeding has historically and traditionally been an equitable one and because all the questions raised on appeal by the intervening defendants were questions of law and not of fact.

5. BANKS AND BANKING—RECEIVERS—JOINDER—COURT RULES.

Denial of a motion to add parties to a receivership action was not error where it was not essential to add the parties to permit the court to render complete relief, where there was no question of law or fact common to all the parties sought to be added, and where the trial court found that the addition of the requested parties would unduly complicate and burden the orderly administration of the receivership estate (GCR 1963, 205.1, 206).

6. BANKS AND BANKING—RECEIVERS—SETTLEMENT OF CLAIMS—STATUTES.

There is imposed upon a receiver of a bank an absolute duty to compromise and settle all claims involving the bank (MCLA 487.552).

7. BANKS AND BANKING—RECEIVERS—CLAIMS—EVIDENCE—PRIMA FACIE CASE.

Claimants against a bank in receivership established a prima facie case where their claims were properly filed with the receiver in accordance with the order of the appointing court, and where the receiver, upon testing the information contained in the claims against the records of the bank, concluded that the claims were true and accurate.

8. WITNESSES—SELF-INCRIMINATION—BANKS AND BANKING—RECEIVERS—DISCRETION.

Refusal of a trial court in a receivership proceeding against a bank to compel a witness to answer certain questions was not an abuse of discretion where the witness had asserted his right against self-incrimination under the Fifth Amendment, the witness was at the time he was called as a witness in the case at bar under indictment on criminal charges growing out of the scheme which had forced the bank into receivership, there was no waiver of his right against self-incrimination as the result of

his answers to certain preliminary questions, and where the trial court was aware of the possible incrimination had answers been compelled.

9. BANKS AND BANKING—RECEIVERS—CLAIMS—LETTERS OF CREDIT—EVIDENCE.

Claims against a bank in receivership based upon "letters of credit" issued by the bank were valid where the evidence indicated that the claimants sent funds to the bank with the expectation of creating a deposit liability to be evidenced by instruments denoted "letters of credit", that the funds were received for deposit by the bank's operating officers, that the funds were received in the form of drafts and checks which were negotiated by the bank, that the issuance of the "letters of credit" was specifically authorized by the Board of Directors of the bank, and that the bank failed because of the illegal activities of its officers in permitting the withdrawal of these funds without receiving in return any obligation to repay or providing means to secure repayments and where there was no evidence produced that any of the claimants was a participant in any fraud upon the bank or had reason to believe that the transactions were other than the ordinary transactions of the bank.

10. BANKS AND BANKING—PRINCIPAL AND AGENT—LETTERS OF CREDIT—VALIDITY OF OBLIGATION.

Claimants against a bank who had been issued "letters of credit" in return for deposits of funds and who dealt with the bank with full knowledge that it could act only through its agents were not required to show that they dealt directly with specific and known agents.

11. BANKS AND BANKING—RECEIVERS—OBLIGATIONS OF BANK.

The relationship of a depositor and bank is that of creditor and debtor, and a valid obligation of a bank becomes the valid obligation of a receiver when the receiver is appointed.

Appeal from Bay, John X. Theiler, J. Submitted Division 3 October 4, 1973, at Lansing. (Docket No. 13504.) Decided March 1, 1974. Leave to appeal denied, 391 Mich 830.

The Peoples State Savings Bank of Auburn was determined to be insolvent upon the petition of Robert P. Briggs, Commissioner of the Michigan Financial Institutions Bureau, and the Federal

Deposit Insurance Corporation was appointed receiver. The General Conference of Seventh Day Adventists and others intervened as plaintiffs to recover sums from the bank for "letters of credit" issued to them. Marguerite W. Sullivan and others, stockholders and former directors of the bank, intervened as defendants. Judgment for intervening plaintiffs. Intervening defendants appeal. Affirmed.

*Smith & Brooker, P. C.,* and *Higgs & Higgs,* for appellees.

*Leopold P. Borrello,* for appellants.

Before: McGregor, P. J., and Bronson and Carland,* JJ.

Carland, J. The Peoples State Savings Bank of Auburn, hereinafter called the bank, was a small state bank located in Auburn, Michigan. Donald L. Pickelman was the president and Gerald J. Nellet the cashier of this bank. For some time prior to February 1970, Graham Alvey and his wife Helene were indebted to the bank in a sum in excess of $80,000. The Alveys were engaged in the development of certain recreational property on Sanford Lake. The Alvey loan was in default and the directors and officers of the bank were becoming alarmed and Alvey was desperately seeking funds with which to retire this indebtedness and further funds to continue his development project.

Out of the situation as outlined above arose events which resulted in the closing of the bank, the appointment of a receiver, and the present litigation.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Without going into all of the details of the ensuing events, suffice to say that Alvey came in contact with Frank Harris whom he advised of his need for money. Harris informed one Dondich of Alvey's expressed need. Dondich had previously met John C. Sumner, a money broker from Jacksonville, Florida, who gave to him a form of "letter of credit" and advised him that if he found an acceptable bank in need of time deposits, that he, Sumner, would supply such deposits upon issuance by the bank of "letters of credit".

In January of 1970, Harris, Dondich, the Alveys, Nellet, and Pickelman met at the Metropolitan Airport in Detroit. Thereafter, Dondich contacted Sumner by phone and explained Alvey's need and inquired as to commissions, brokerage fees, and other expenses of financing.

As the result of these conversations, Sumner suggested a meeting with the Alveys in order to explain the type of program that he would enter into. On January 7, 1970, a meeting was again held at the Metropolitan Airport in Detroit between Harris, Dondich, Drake (who also sought to borrow money), Sumner, and his employee, Haley. Later that day, these parties flew to the Tri-County Airport where they met the Alveys, Pickelman, and Nellet. Sumner learned for the first time that the contemplated borrowing by the Alveys, Drake, and Harris totalled $3,000,000. Sumner was assured by the bank's officers that the bank was authorized to issue "letters of credit" and was furnished a certified copy of the resolution authorizing such action. Thereupon a plan or program was agreed upon between Sumner and the bank. In substance, the bank was to issue "letters of credit" to investors furnished by Sumner. These investors were to transmit their funds directly to

the bank and upon receipt thereof, the funds were to be deposited to the account of Sumner Financial Corporation which in turn would make the loans to Alvey and other would-be borrowers. The letters of credit were to be printed in accordance with a form provided by Sumner and the resolution of the bank's board of directors together with the opinion of the bank's counsel were to be printed on the back thereof.

This plan was summarized in a letter from Sumner to Pickelman dated February 13, 1970. No note, mortgage, or other evidence of indebtedness was ever executed in favor of the bank by either Sumner or any of the persons to whom Sumner loaned money.

The "letters of credit" were to bear interest of seven percent per annum and the investors were also to be paid a two percent incentive fee by Sumner. Under this plan, there was no way that the bank could make a profit according to the testimony of Sumner taken by way of deposition.

The "letters of credit" were prepared and printed on the back thereof was the resolution and opinion of counsel required by Sumner, both of which were false.

Sometime late in February 1970, investors began to invest and the bank began to issue the "letters of credit" and deposit the funds to Sumner's credit. In fact, the money poured in at such a rate that the bank because of the secrecy surrounding the issuance of the letters and lack of help was unable to keep pace. Thus, at the time of the closing of the bank huge sums had been received and deposited to Sumner's account for which no letters had been issued. The intervening plaintiffs-appellees (hereafter referred to as claimants) were the investors secured by or through Sumner and

the purchasers of the "letters of credit" so issued or to be issued.

The scheme, or perhaps the dream, was of but short duration. After learning that "letters of credit" were being issued by the bank and brokered by Sumner, the Federal Deposit Insurance Corporation (FDIC) caused the bank to be examined. Following this examination and after a conference of the directors of the bank, Robert P. Briggs, Commissioner of the Financial Institutions Bureau, caused to be filed on April 18, 1970, a petition in the Bay County Circuit Court seeking the appointment of a receiver for the bank. The petition alleged the insolvency of the bank and listed among the bank's liabilities the proceeds received for the issuance or anticipated issuance of 539 "letters of credit", each in the amount of $5,000, totalling some $2,740,000. Testimony was taken in support of the petition; the insolvency of the bank was determined and the FDIC was appointed receiver. Two of the directors were present at the hearing and were represented by counsel and no objections were raised as to the appointment of a receiver.

The receivership proceeding was designated as No. 5972-D and Judge Theiler was assigned to supervise the same. The receiver has proceeded with the liquidation of the bank's assets. A liquidating dividend of 70% has been paid to all depositors except the claimants. The FDIC as insurer has paid all depositor creditors except the "letter of credit" holders.

On May 22, 1970, the intervening defendants-appellants being stockholders and former directors of the bank instituted an action in the same court against the FDIC as receiver of said bank, seeking to restrain the receiver from paying any sums to

the claimants and seeking further a determination that the "letters of credit" were not obligations of the bank. These plaintiffs further sought a revocation of the order appointing the receiver and a finding that the bank was in fact solvent. This action was circuit court No. 6076-T.

Thereafter, the right to intervene was granted to Robert P. Briggs as Commissioner of Financial Institutions Bureau, Lake Union Conference of Seventh Day Adventists, and others. On June 16, 1970, the plaintiffs in this action filed an amended complaint, a demand for jury, and a motion to add parties defendant. Following the filing of the amended complaint, a motion for accelerated judgment was filed by FDIC and a motion for summary judgment by the commissioner.

On June 22, 1970, a hearing was held at which time the court refused to grant the summary judgment in plaintiffs' action, but on its own motion and by order dictated from the bench transferred the question of the validity of the "letters of credit" to receivership proceedings, file No. 5972-D, because he found:

"That the filing of the amended complaint has resulted in the creation of new issues and new facts and has added additional parties to create new issues and new facts so that there is no longer a situation where file No. 6076 is a proper vehicle for equitable decision and determination as in file No. 5972 of issues that as between the parties can be accomplished in file No. 6076.

"It is our finding that those issues should be tried and determined in the original file and this file having been initiated subsequent to that by estoppel, I have nothing else and that they should be bound by the decision in file No. 5972 as to the validity of the letters of credit in that action. That was the original lawsuit. It is the vehicle in our opinion where that issue should be

litigated where it can be most expeditiously litigated, and where it should be properly litigated since, in effect, in this action we now have a collateral attack on the validity of the appointment of a receiver."

On September 21, 1970, an order was entered dissolving the restraining order previously issued and on March 14, 1972, cause No. 6076-T was dismissed for lack of progress.

The order of June 22, 1970 seems to have been accepted by all parties since no attempt to review was made by appellants who intervened in the case at bar which is here under review. After intervention, the appellants filed a cross-complaint and counter-complaint against Sumner, et al., demanded a trial by jury, and sought to add other parties.

After granting intervention by appellants, the court denied the request to add further parties for the reason that such addition would unduly burden and complicate the orderly administration of the receivership estate. The court also entered an order on November 10, 1970, denying the demand for jury trial, holding a receivership to be a summary proceeding in equity and that therefore no right to jury trial existed.

Following trial, arguments, and the submission of briefs by all parties, the trial judge filed a very complete and exhaustive opinion in which he found that the objections raised to the allowance of the claims of the holders of the "letters of credit" and the affirmative defenses filed by stockholder-directors-appellants were without merit and "that the claims of claimants filed in this cause are valid and binding obligations of the Peoples State Savings Bank of Auburn, Michigan".

Judgment was entered October 8, 1971, allowing appellees' claims and on January 31, 1972, an

order was entered fixing the amount of each claim in accordance with the terms of the judgment. From this judgment and from this order, the appellants appeal.

Except for certain procedural errors claimed by appellants which will be discussed throughout this opinion, the principal question which must be answered on this appeal is as follows: Did the trial court commit reversible error in determining the claims of the appellee-claimants to be valid and binding obligations of the Peoples State Savings Bank of Auburn, Michigan?

In proceeding to answer the issues raised by this appeal, we begin by giving recognition to the long-time and well-enunciated principle of our Legislature and our courts that banks as special institutions are affected with an overriding public interest. Within the Banking Code of 1969 is stated the broad public policy of the state toward banking corporations:

"It is the policy of this state that the business of all banking organizations shall be supervised and regulated in such manner as to insure the safe and sound conduct of such business, to conserve their assets and to eliminate unsound and destructive competition among such banking organizations and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors and shareholders." MCLA 487.302; MSA 23.710(2).

"[W]henever it appears to the commissioner that the bank is in an unsafe or unsound condition, the commissioner shall either appoint a conservator under the provisions of section 261 or, with the attorney general representing him, shall apply to the circuit court for the county in which the bank is located for the appointment of a receiver for the bank. In any proceeding for the appointment of a receiver the commissioner shall request that the court appoint the federal deposit insurance corporation as the receiver if the deposits in the

bank are insured to any extent by the corporation." MCLA 487.551; MSA 23.710(251).

That there is necessity for and validity in the broad powers granted to the Commissioner of the Financial Institutions Bureau was fully recognized in the decision of this Court in *Commissioner of Banking v Berry,* 27 Mich App 271, 306–307; 183 NW2d 436, 452 (1970), where the Court said:

"But it is equally indisputable that the regulation of banks and other such institutions burdened with a public trust have never been treated as an 'ordinary case'—and rightfully so. The banking business, more than any other, has been the subject of the most careful scrutiny of regulatory agencies. The unique character and tradition of banking often justify the delegation of extremely broad discretionary powers to state banking commissioners which, if attempted elsewhere, would likely violate due process. 1 Davis, Administrative Law Treatise, § 4.04, p 247."

As stated above, after the appointment of the receiver in the case at bar, the stockholders and directors instituted an action against the receiver seeking among other things to litigate the claims of the holders of the "letters of credit". Upon motion for accelerated judgment by the receiver and for summary judgment by the commissioner, the trial court refused to grant the motions but transferred the question of the validity of the "letters of credit" to the receivership action. In so doing, did the court commit error? We think not.

In making such transfer of the issue, the court recognized the rule that in Michigan a receiver cannot be sued without leave of the appointing court. In *Citizens' Savings Bank v Ingham Circuit Judge,* 98 Mich 173, 177; 57 NW 121 (1893), the Court speaks as follows:

"The proper and orderly manner for the allowance of such claims is by petition to the court appointing the receiver, and in the same action."

See also *Cohen v Bologna,* 52 Mich App 149; 216 NW2d 586 (1974).

The trial judge further recognized that the action by the stockholders against the receiver was in effect a collateral attack against the proceedings already pending. The impropriety of permitting litigants to pursue such a course of action against a receiver would result in inconsistent results and further litigation in resolving such inconsistencies. The Court so held in *Earle v Humphrey,* 121 Mich 518, 524; 80 NW 370, 372 (1899):

"It would lead to most unseemly struggles if parties having claims against insolvent banks could apply to any other tribunal for such allowance, and thus compel the receiver, who must in all such cases be made the party defendant, to appear in other jurisdictions to defend against the action * * * and would lead to great inconvenience and cost to the estate which the receiver represents."

The language in § 252 (MCLA 487.552; MSA 23.710[252]) could not speak in plainer or more understandable language.

"Subject to the approval of the appointing court, a receiver shall: (a) take possession of the books, records and assets of every description of the bank * * * (b) [s]ue and defend, compromise and settle all claims involving the bank."

If any error was committed by the trial court as to this aspect of the case, it did not result from the transfer of the issue but rather from the failure to grant the summary judgment sought by the receiver and the commissioner. That the validity of

these claims was the real heart of the shareholders' action is beyond question, because after the transfer their suit was permitted to die through lack of progress.

The second issue raised by appellants is whether after transfer of the issue of the validity of the "letters of credit" they were entitled to a jury trial in the receivership proceedings.

The appellants have been permitted to intervene in what has historically and traditionally been conceived to be an equitable proceeding. They have been permitted to intervene in order that they might contest or object to the claims which have been filed in equity.

Receivers in Michigan are appointed by circuit courts under the authority of MCLA 600.2926; MSA 27A.2926:

"Circuit judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law."

That the receivership is an equitable proceeding and that the appointing court has basic equitable powers is recognized in *Reichert v Fidelity Bank & Trust Co,* 257 Mich 535, 541; 242 NW 236, 238–239 (1932). In this case the Court stated:

"When the bank closes, the duty falls upon the receiver to determine the net assets, which he does by allowing proper set-offs.

\*     \*     \*

"Such adjustment is within the equitable powers of the court, because its arm, the receiver, stands in the place of the bank. Liquidation was committed to a court of equity to permit equity to be done."

In *Barton v Barbour,* 104 US 126; 26 L Ed 672 (1881), it was urged that by leaving all questions

in the hands of the appointing court claimants would thereby be denied the right to jury trial. To which the Court replied as follows:

"The argument is much pressed, that by leaving all questions relating to the liability of receivers in the hands of the court appointing them, persons having claims against the insolvent corporation, or the receiver, will be deprived of a trial by jury. This, it is said, is depriving a party of a constitutional right.

\*    \*    \*

"But those who use this argument lose sight of the fundamental principle that the right to trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity." 104 US at 133; 26 L Ed at 676.

In *Katchen v Landy,* 382 US 323; 86 S Ct 467; 15 L Ed 2d 391 (1966), a demand was made for jury trial by one who had filed a claim in a bankruptcy court, and in rejecting this claim, the Court said:

"But although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v Irving Trust Co,* 287 US 92 [53 S Ct 50; 77 L Ed 185 (1932)], when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity. The Bankruptcy Act, passed pursuant to the power given to Congress by Art I, § 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts the creditor's legal claim into an equitable claim to a pro rata share of the *res* \* \* \* and as the proceedings of bankruptcy courts are inherently proceedings in equity, *Local Loan Co v Hunt,* 292 US 234, 240 [54 S Ct 695, 697; 78 L Ed 1230, 1232; 93 ALR 195, 198 (1934)]; *Pepper v Litton,* 308 US 295, 304 [60 S Ct 238, 244; 84 L Ed 281, 287 (1939)], there is no Seventh Amendment

right to a jury trial for determination of objections to claims, including § 57g objections." 382 US at 336–337; 86 S Ct at 476; 15 L Ed 2d at 401.

It should further be noted that under order of the court, the claimants were required to file all claims with the receiver in the form set out in the order. Upon such filing the receiver was required by statute (MCLA 487.552[b]; MSA 23.710[252][b]), subject to the approval of the appointing court, to "compromise and settle all claims involving the bank". The claimants had no right to a jury trial and those who object to their claims should have no better right. Further, there are no real issues of fact here involved, and thus, no jury question. Since there is no material dispute as to facts, only legal questions remain. A reading of the questions raised on appeal by appellants indicates that they are all questions of law and not of fact. We hold that appellants were not entitled to a jury trial.

Appellants further claim error in the denial of their motion to add parties to the receivership action, it being asserted that the claimants have no valid claim against the bank but rather against the parties sought to be added. It would thus appear that the appellants presume to dictate to the claimants who they should claim against. Here the claimants allege that they are creditors of the bank and this was the issue to be decided by the court. We do not find that the presence of the persons sought to be added to the action by appellants were essential to permit the court to render complete relief as to the issue before it (GCR 1963, 205.1). Nor do we find any question of law or fact common to all of them which will arise in this action (GCR 1963, 206). The claimants seek to establish the validity of their claims while the appellants seek to establish that either the claim-

ants, the bank, or both were defrauded by the action of the parties sought to be added. If the claimants are to prevail against the receiver, they must do so because of the actions of the bank through its officers in accepting their money for deposit and not because of the fraudulent conduct of third parties.

If the bank has been defrauded by these so-called "money brokers", the statute places the sole responsibility upon the receiver to proceed against them. This the receiver has done and any funds recovered will redound to the benefit of the stockholders.

GCR 1963, 206, further provides that persons may be joined as defendants "if it appears that their presence in the action will promote the convenient administration of justice". The trial court found to the contrary when it determined as follows:

"The addition of the requested additional parties would unduly complicate and burden the orderly administration of the receivership estate".

We find no merit in this contention of the appellants.

During the course of the trial the court admitted into evidence certain affidavits of claimants (plaintiffs' exhibits 2-A and 2-B) to prove the material facts contained in said affidavits. Appellants claim error by asserting that they were thereby denied the right of cross-examination. Claimants reply by asserting that the claims as filed were admissible to establish a prima facie case and that thereafter appellants had the burden of going forward.

There seems to be no real dispute of the fact that during the time that the scheme or plan was in operation these claimants paid or caused to be

paid into the bank some $2,740,000. That in return therefor the claimants received or were entitled to receive "letters of credit" in a corresponding amount. Neither is it disputed that there thereby arose valid claims against the bank unless the claimed validity thereof was defeated by the existence of a valid defense as to their allowance.

Again we repeat that by statute there is imposed upon the receiver the absolute duty "to compromise and settle all claims involving the bank" Further MCLA 487.554; MSA 23.710(254) provides:

> "The full and exclusive procedures for the liquidation of a bank subject to the provisions of this act shall be the procedures prescribed in this act and no receiver or other liquidating agent shall be appointed for such purpose or for any bank or its assets and property except as expressly provided in this act."

Since the banking code does not specifically provide any requirement for notice or for the manner and form for the presentation of claims, it must of necessity follow that these matters are part of the responsibility of the receiver "subject to the approval of the appointing court". The appointing court did provide for the manner of notice and the period of time within which claims should be filed, and the forms for filing were furnished by the receiver. The receiver complied with such order as did the claimants. The receiver upon receipt of the claims tested the information contained therein against the records of the bank. As the result of the test applied, the receiver concluded that as a matter of fact some $2,740,000 was actually paid by the claimants and received by the bank. That based on such findings he, the receiver, could raise no objections to the claims as filed. Upon the facts the question of whether the

claims were valid was one of law for determination by the court.

At this point, had no objection been made, the court would have been justified in allowing the claims. If under such circumstances the claims were allowable as sworn to, it would indeed seem strange to say that they were of no probative value. Had the claims been filed in either the probate court or bankruptcy court without objections being raised, they would have been allowed.

There appears to be no Michigan case which is of help in deciding this issue. It would seem that the proceedings at bar are analogous to a proceeding in bankruptcy, *Barton v Barbour, supra,* and that therefore we can look for guidance to the bankruptcy rules and the decisions thereon as well as the texts dealing with the subject.

11 USCA 93(a), being § 57(a) of the Federal Bankruptcy Act, states in part as follows:

"A proof of claim shall consist of a statement, in writing and signed by a creditor, setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefor; and whether any and, if so, what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditor. A proof of claim filed in accordance with the requirements of this title, the general orders of the Supreme Court, and the official forms, even though not verified under oath, shall constitute prima facie evidence of the validity and amount of the claim."

The author of 1 Collier on Bankruptcy (14th ed), p 206, comments as follows:

"The statute speaks of a 'proof of claim'. Does this terminology imply that the presentation of a claim which complies with the statutory requirements for proofs of claim actually has the evidentiary value and function of 'proof'? Does a denial or objection compel

the creditor to go forward with this evidence, or may he rely on his 'proof' and expect the objector to go forward? In bankruptcy liquidation, a claim proved and filed as required by the Act amounts to a prima facie case. It establishes the debt for all purposes in the proceedings, unless the objector not only denies it but produces some evidence to the contrary."

In 3 Clark on Receivers, § 649, p 1142, the author makes the following statement:

"Claims should be presented in a formal way following generally the practice of presenting sworn proofs on claims in bankruptcy."

16 Fletcher's Cyclopedia on Corporations (Permanent ed), ch 64, § 7901, p 592, reads as follows:

"Receivership proceedings are never bound by those hard and fast rules which govern statutory proceedings in the filing of claims against estates. Nor do the ordinary rules of pleading apply with strictness to claims filed with a receiver. In some States it is held that the statute providing for administering the affairs of insolvent corporations by means of receiverships is in its essential elements a bankruptcy law, and that the rules to be applied to such administration should be those of the bankruptcy law."

The evidentiary status of the proof of claim itself is discussed in 2 Remington, Bankruptcy, § 721, p 146, where it is said that:

"A 'proof of claim' in the sense in which the term is used in the Bankruptcy Act is accordingly a statement of the claim with an affidavit of the claimant or someone in his behalf in support thereof, made ex parte and not by the introduction of testimony and other evidence in open court or before the referee. It establishes the claim prima facie, but not without leaving the burden of proof on the claimant if there is a contest and contravening proof is introduced."

Remington goes on to say in the same work at §§ 1043–1046, p 499, that:

"the 'proof of claim' as filed, if in due form, has some standing, at the outset, as evidence, and the objector has to overcome it by introducing at least some proof in support of his objections."

Likewise:

"A proof of claim is prima facie evidence thereof and shifts upon an objector the burden of going forward with evidence to rebut the evidence of the claim." 2 Remington, Bankruptcy (1973 Supp), §§ 1043–1046 at p 86.

In *Whitney v Dresser,* 200 US 532, 534; 26 S Ct 316, 317; 50 L Ed 584 (1906), the question involved as stated by the Court was:

"[W]hether the sworn proof of claim is prima facie evidence of its allegations in case it is objected to?"

Justice Holmes was of the opinion that some force should be allowed for the word "proof" in the phrase "proof of claim" and further, that since the claim would be allowed upon filing if no objection was made, that therefore proof of claim must be of some probative force. His opinion concludes as follows:

"Convenience undoubtedly is on the side of this view. Bankruptcy proceedings are more summary than ordinary suits. Judges of practical experience have pointed out the expense, embarrassments and delay which would be caused if a formal objection necessarily should put a creditor to the production of evidence or require a continuance. Justice is secured by the power to continue the consideration of a claim whenever it appears there is good reason for it. We believe that the understanding of the profession, the words of the act and

convenient and just administration all are on the side of treating a sworn proof of claim as some evidence even when it is denied." 200 US at 535–536; 26 S Ct at 317; 50 L Ed at 585.

We are of the opinion that the claims were properly filed in accordance with the order of the court; that they are true and accurate and were properly received in evidence; and that upon their receipt, the claimants had established a prima facie case.

We find no merit in the contention of appellants that error resulted from the refusal of the trial court to compel Gerald J. Nellet to answer certain questions propounded by their counsel after Nellet had asserted his right against self-incrimination under the Fifth Amendment. The witness was at the time he was called as a witness in the case at bar under indictment in the United States District Court on the criminal charges growing out of the scheme or plan here involved. We can discern no waiver of his right against self-incrimination as the result of his answers to certain preliminary questions. The trial court was aware of the possible incrimination had answers been compelled. We find no abuse of discretion by the trial judge. *In Re Schnitzer,* 295 Mich 736; 295 NW 478 (1940); *People v Hoffa,* 318 Mich 656; 29 NW2d 292 (1947); *People v Joseph,* 384 Mich 24; 179 NW2d 383 (1970).

It has been clearly and indisputably established by evidence received in this case that between February of 1970 and the date of the closing of the bank on April 18, 1970, the bank received $2,740,-000 from the claimants here involved. That these funds were received for deposit by the operating officers, the president, and the cashier, accompanied by a request that in return for such deposits

the bank issue "letters of credit" in corresponding amounts. That these funds were received in form of drafts or checks which were negotiated by the bank and deposited to the account of Sumner Financial Corporation. That after such deposits the funds were subject to withdrawal by said corporation; that all of said funds were so withdrawn except some $400,000 which remained a part of the assets of the receiver. That certain "letters of credit" were issued as requested and all others were in the process of issue at the time of closing.

There therefore remains for decision the question of whether the claims of those who invested in "letters of credit" are valid obligations of the Peoples State Savings Bank of Auburn. The trial court found them to be valid obligations of that bank and we agree.

While on appeal this Court hears chancery cases *de novo,* our review is subject to GCR 1963, 517.1 which provides in part as follows:

"In all actions tried upon the facts without a jury * * * [f]indings of fact shall not be set aside unless clearly erroneous."

The trial court found that the issuance of the certificates of deposit was specifically authorized by the board of directors of the bank. That there is little or no difference between a "letter of credit" and a certificate of deposit. That Pickelman and Nellet were the chief operating officers of the bank. That the receipt and endorsement of all drafts and checks sent to the bank by claimants or their brokers on their behalf were the acts of the officers. That some $2,700,000 was sent directly or indirectly to the bank by checks or drafts made payable to the bank. That the money was sent

with the expectation of creating a deposit liability to be evidenced by an instrument denoted "letter of credit". That although the investors had been promised a bonus by Sumner and although the "letters of credit" were to bear interest in excess of the rate authorized by FDIC, and although these were not ordinary transactions of the bank, there was no evidence produced that any claimant was a participant in any fraud upon the bank or had any reason to believe that the transactions were other than the ordinary transactions of the bank. We believe that these findings are well supported by the record. "[A] bank may engage in the business of banking and any business related or incidental thereto, and for such purpose, without specific mention thereof in its articles, shall have all the powers conferred by this act and the following additional corporate powers". MCLA 487.451; MSA 23.710(151).

"To have and exercise all of the powers and means appropriate to effect the purpose for which the bank is incorporated." Subsection (7) of the above statute.

We believe that the issuance of certificates of deposit and/or "letters of credit" could well be one of the purposes for which the bank was organized. It was organized to accept deposits and to issue instruments or other evidence of deposit liability.

The appellants argue that the claimants may not rely upon the "apparent authority rule" as a ground for recovery. This seems to be an argument based upon no foundation in fact. The bank was engaged in banking. The money was sent to and received and retained by the bank. The sender had every reason to and did rely on one of two things, either that upon deposit the requested "letters of credit" would be issued or that the money would

be returned. The claimants dealt with the bank with full knowledge that it could only act through its agents. It is therefore unnecessary to show that they dealt directly with specific and known agents. There was a holding out by the bank.

We find it unnecessary to discuss and determine whether the claimants were "holders in due course". We do conclude however that they were not donors.

The appellants throughout all of these proceedings and in their briefs persistently ignore certain inescapable or undisputed facts. By so doing, they argue from false premises. Despite everything that was done by or agreed upon between Pickelman, Nellet, and Sumner, the claimants' money was deposited and retained by the bank. The bank had the money and would still have it except for the machinations of its officers. Neither the deposit of money nor the issuance of the "letters of credit" caused the bank to fail. The bank failed because of the illegal activities of its officers in permitting the withdrawal of these funds by Sumner without receiving in return any obligation to repay or providing means to secure repayment. Any attempt to assess the blame for these acts to these claimants is to attempt to escape from reality, common decency, and common sense.

The relationship of depositor and bank is that of creditor and debtor. *Benge v Michigan National Bank,* 341 Mich 441; 67 NW2d 721 (1954).

It could never be successfully argued that had the bank continued to do business and in doing business had received and retained the money under these circumstances, the bank had no obligation to repay. The instant these funds came into the bank it became a debtor of the claimants. That

which was the valid obligation of the bank is now the valid obligation of the receiver. To rule otherwise would result in the unjust enrichment of the appellants who elected the directors, who in turn entrusted the operation of the bank to Pickelman and Nellet. It would also result in the failure to do equity.

We affirm.

All concurred.