IN THE MATTER OF THE PETITION OF THE COMMISSIONER
OF THE MICHIGAN FINANCIAL INSTITUTIONS BUREAU FOR
THE APPOINTMENT OF A RECEIVER FOR BIRMINGHAM
BLOOMFIELD BANK

Docket No. 54049. Submitted April 7, 1982, at Detroit.—Decided May
19, 1982. Leave to appeal applied for.

The Birmingham Bloomfield Bank was declared insolvent and a
receiver was appointed to liquidate the bank and distribute its
assets. The creditors have been paid and there are excess funds
available for distribution to shareholders. The receiver peti-
tioned the Oakland Circuit Court for authority to pay a liqui-
dating dividend out of the assets. The court, Steven N. An-
drews, J., ordered such a payment, to be paid ratably to the
shareholders in proportion to the number of shares held by
each. BBB Shareholder Group, an informal group of some of
the minority shareholders which had intervened in the action
in circuit court, appealed, alleging that the pro rata distribu-
tion of assets was inequitable and that the circuit court had the
authority to consider equitable factors and to enter an order by
which the majority shareholders would not share equally in the
dividends. *Held:*

The statute controlling the distribution of a liquidating divi-
dend of a bank in receivership requires that distribution to the
shareholders be in proportion to the number of shares held by
each. The court was not empowered to make its own distribu-
tion depending on its assessment of equitable factors. Further-
more, the remedy of the minority shareholders is to bring an
action for fraud. Such an action has already been brought in
this case and settlement was made with the shareholders and
directors. The circuit court did not err.

Affirmed.

1. BANKS AND BANKING — RECEIVERSHIP — DISTRIBUTION OF ASSETS
   — STATUTES.

   The statutory provision governing the distribution of a liquidat-

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur 2d, Banks § 765.
[2] 10 Am Jur 2d, Banks § 71.

ing dividend of a bank in receivership requires that the dividend be distributed to shareholders in proportion to the number of shares held; a court has no power to base such distribution upon an assessment of equitable factors and a resulting finding of fault (MCL 487.552[h]; MSA 23.710[252][h]).

2. BANKS AND BANKING — FRAUD — REMEDIES.

   The proper remedy for a bank which has been defrauded is to bring an action against the defrauding parties; any sums recovered in such an action redound to the benefit of the stockholders.

*James L. Elsman,* for BBB Shareholder Group.

*Kerr, Russell & Weber* (by *Richard D. Weber* and *James R. Case),* for Continental Illinois National Bank and Trust Company.

*Hardig, Goetz, Heath, Merritt & Reebel* (by *H. Kay Maxwell* and *James L. Allen),* for Triple B Investment Company.

Before: ALLEN, P.J., and D. C. RILEY and R. R. FERGUSON,* JJ.

ALLEN, P.J. In this appeal, we are asked to decide an issue of first impression: Where some $2,000,000 is now available for distribution to shareholders of a once insolvent bank, does MCL 487.552(h); MSA 23.710(252)(h), governing the distribution of net assets of a bank in receivership, require the duly appointed receiver of such bank to distribute such funds to the shareholders ratably in proportion to the number of shares held, or may the receiver consider equitable factors as to why certain shareholders should not share pro rata in such liquidating dividend? On September 17, 1980, the trial court ordered payment of liquidating dividends to be paid ratably to the share-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

holders in proportion to the number of shares held and owned by each. From that order, intervenor-appellant appeals of right.

In February 1971, the Birmingham Bloomfield Bank of Birmingham, Michigan (bank), was declared to be insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver to liquidate the bank and distribute its assets. Liquidation proceedings have lasted nearly ten years. All creditors have been paid in full and there is now some $2,000,000 available for immediate distribution to shareholders, plus an estimated $5,000,000 or more for eventual distribution to shareholders. The question raised on appeal is how such funds should be distributed.

Eighty percent of the bank's common stock is owned by Triple B Investment Company (Triple B), a Michigan limited partnership, some of whose partners also served at times as directors and officers of the bank. Among these was Donald Parsons. The remaining 20% of the common stock is held by some 400 individuals, sometimes referred to as the "non-Parsons group", or "White Hat Group". Conversely, Triple B is sometimes referred to as the "Black Hat Group". Intervenor-appellant BBB Shareholder Group (BBB), led by attorney James L. Elsman, is an informal group of some 87 to 100 members of the "White Hat Group". It is not a legal entity, never having filed as a corporation, a partnership, or under the assumed name statute.

Almost all of Triple B's 80% stock holdings were pledged to intervenor-appellee Continental Illinois National Bank and Trust Company (Continental), under two 1970 instruments. Under those instruments, Triple B pledged, assigned and transferred to Continental 356,012 of its shares of common

stock and all dividends and distributions or other rights in connection with such shares. Additionally, the instruments provided that Continental could take control of any of the proceeds received on such stock.

After the establishment of the receivership in 1971, several lawsuits were filed against certain officers and directors of the bank, its insurers and Triple B. Two lawsuits merit particular mention. One was a shareholders' derivative action filed in the Oakland County Circuit Court by FDIC, as receiver, against the bank's directors led by Donald Parsons.[1] That suit was settled for $850,000, which was paid to the receivership. The proceeds of that settlement with accrued interest constitute the bulk of the $2,000,000 presently available as a liquidating dividend to shareholders.

The second principal lawsuit was a class action suit filed in the United States District Court by intervenor BBB for and on behalf of the 400 minority stockholders heretofore mentioned as the "non-Parsons Group".[2] Plaintiff in that suit was represented by attorney James Elsman. That suit was settled for $225,000. Final orders approving both the $225,000 settlement and ordering payment thereof to all members of the class and the $850,000 settlement and ordering its payment to the receiver were signed by United States District Judge Damon J. Keith on May 27, 1977. In short, the White Hat shareholders have been paid $225,-000, but the $850,000 settlement together with accrued interest thereon, now in the hands of the

[1] *Federal Deposit Ins Corp, Receiver of Birmingham Bloomfield Bank v Merritt D Hill, et al,* Oakland County Circuit Court Case No. 71-81108.

[2] *William Brashear, Executor of Estate of Edward Rothman, et al v Charles F Adams, et al,* United States District Court, Eastern District of Michigan, Southern Division, Case No. 39594.

receiver, has been ordered distributed to White Hat and Black Hat shareholders alike on a pro rata basis. It is this order which the BBB Group so vigorously protests.

The practical result of the trial court's order of pro rata distribution, argues BBB, is that the very directors and officers who controlled the bank, and who paid $850,000 in settlement of their misfeasance and malfeasance, will now receive 80% of it (plus accrued interest and earnings) back, plus any other cash on hand amounting to some $2,000,000 in total, whereas the 20% shareholders who had nothing to do with the mismanagement of the bank will receive only 20% of such funds. Additionally, BBB objects to the bank directors who were sued receiving *any* liquidating dividend either from the $2,000,000 now available for distribution or the estimated $5,000,000 future liquidating dividend.[3] According to BBB, MCL 487.552(h); MSA 23.710(252)(h), governing the distribution of a liquidating dividend of a bank in receivership, authorizes the circuit judge to take testimony from minority shareholders and consider equitable factors which would militate that the majority or Black Hat shareholders should not share equally in liquidating dividends.

Triple B contends, and the trial court agreed, that the purpose of a bank receivership is not to apportion fault among the shareholders but is to wind down the bank's affairs, that the proper remedy for obtaining relief against directors and

[3] The principal sources of receivership equity, besides the $850,000 settlement, are (1) appreciation in portfolio investments such as municipal bonds and real estate mortgages caught in a bad market when the bank became insolvent but held by the receiver and sold later at higher prices, and (2) interest earned on portfolio investments during recent years when rates increased. The receiver loaned itself $100,000,000 at 4% to give itself liquidity. That sum could be invested in securities returning considerably higher rates of return.

shareholders at fault is by way of a derivative suit, that such a suit or suits have been filed and settled, and that the clear and unambiguous language of the statute governing distribution of bank liquidating dividends is payment pro rata to shareholders according to the number of shares held. Continental argues that almost all of the 80% of shares owned by Triple B were pledged to Continental in return for two loans totaling $6,954,977.50, that Continental had no part in the alleged misfeasance or malfeasance by certain directors and officers, and that to pay liquidating dividends in any manner other than pro rata would be manifestly inequitable.

MCL 487.552; MSA 23.710(252) states in relevant part:

"Sec. 252. Subject to the approval of the appointing court, a receiver shall:

*  *  *

"(h) Pay, ratably, to the shareholders of the bank in proportion to the number of shares held and owned by each the balance of the net assets of the bank after payment or provision for payments as provided in subdivisions (e), (f) and (g)."

A "ratable distribution" is one which is made proportionately. *State ex rel Carroll v Corning State Savings Bank,* 127 Iowa 198, 203; 103 NW 97, 99 (1905). Clearly, the plain and unambiguous language of this provision mandates distribution of a liquidating dividend to shareholders in proportion to the number of shares held. Appellant claims, however, that the qualifying phrase, "subject to the approval of the appointing court", allows the appointing court to make its own distribution depending on its assessment of equitable factors. We are not persuaded.

From the time of their frist enactment in 1887 until the present time, the Michigan Banking Codes have always provided for a pro rata distribution of net proceeds to shareholders, § 57, 1887 PA 205 provided:

"From time to time, under the direction of the Commissioner of the Banking Department, the receiver shall make ratable dividends of the money realized or collected by him on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and the *remainder of the proceeds, if any,* after the costs and expenses of such proceedings and all debts and obligations of the bank are satisfied, *shall be paid over to the shareholders of such bank, or their legal representatives, in proportion to the stock by them respectively held."* (Emphasis supplied.)

Section 57 was re-enacted with a proviso not relevant to the present issue when the General Banking Act was revised in 1929. 1929 PA 66, § 65. In 1937 the General Banking Act was recodified upon the adoption of the Michigan Financial Institutions Act. Under § 119 of that recodification, all valid claims proved to the satisfaction of the banking commission were first paid,

"and the remainder of the proceeds, if any, after the payment of all expenses and debts of the receiver, * * * *shall be paid over to the shareholders of such bank, or their legal representatives, in proportion to the stock by them respectively held."* 1937 PA 341, § 119. (Emphasis supplied.)

Various other sections of the Financial Institutions Act of 1937 required the appointed receiver of an insolvent bank to act "with permission of the [banking] commission" (MCL 487.128) or "with the consent and under the supervision of the commis-

sion" (MCL 487.116) or "with the approval of the commission and a court of competent jurisdiction" (MCL 487.116) or act "with the approval and under the direction of the commission" (MCL 487.117).

In 1969, the Michigan Financial Institutions Act was replaced by the Banking Code of 1969. It consolidated all of the powers and duties pertaining to insolvent banks into one section, MCL 487.552; MSA 23.710(252), the section at issue in the instant case. The power formerly given the banking commission to appoint the receiver was given to the circuit court, and the "with permission of" or "with the consent of" the banking commission provisions of the Financial Institutions Act were transferred to the appointing court. Explained in this manner, it is clear to us that the new language "subject to the approval of the appointing court" intends no more than to give the appointing court the same powers of consent and approval as were theretofore given the banking commission under the various sections of the Financial Institutions Act referred to earlier. Had the Legislature intended to grant the appointing court broad equitable powers to apportion fault, the Legislature would have used specific language to such effect and would not have retained the clear and unambiguous language found from 1887 on that the distribution should be paid to shareholders in proportion to the number of shares held. In our opinion, the language "subject to the approval of the appointing court" was intended to insure that the receiver complies with the statute.

We reject BBB's claim that the "Deep Rock Doctrine" set forth in *Taylor v Standard Gas & Electric Co,* 306 US 307; 59 S Ct 543; 83 L Ed 669 (1939), compels final distribution according to

shareholder fault as determined by the trial court. In that case, the Court found that Standard had caused the bankruptcy of Deep Rock by mismanaging Deep Rock for the benefit of Standard. The Court concluded that the bankruptcy court was required to subordinate Standard stockholder interests to the interests of preferred stockholders of Deep Rock. The Court held that no plan of reorganization could be approved which did not give certain preference to the preferred stockholders and at least an equal voice with Standard in the management of Deep Rock. The case is distinguishable in that *Taylor* involved a reorganization under federal bankruptcy laws. If, in the instant case, the circuit court were turning over management of net assets of the bank to the majority stockholders, the situation would be similar. But here, the minority stockholders will not be exposed to the problems faced by the preferred shareholders in *Taylor.* Here, the minority stockholders will not be exposed to further mismanagement or to being taken advantage of by the majority stockholders. Here, all shareholders will share equally in the net assets to be distributed. Furthermore, the decision in *Taylor* was based on a specific provision in the Bankruptcy Act providing that "a plan of reorganization * * * *may* include provisions modifying or altering the rights of stockholders * * *". In the instant case, the only statute pertaining to the payment of liquidating dividends mandates that the receiver "*shall* pay, ratably, to the shareholders". The statute in *Taylor* gave discretionary (equitable) powers to the trustee, whereas in the case before us the statute allows no discretion.

In summary, we hold that the trial court was entirely correct in stating that the proper remedy

for obtaining relief against the majority stockholders and directors was by instituting a separate derivative action "rather than bringing motions to have this court use its equitable powers to preclude the receiver from enforcing its duties as delineated in MCL 487.552". The statute does not confer such discretionary power. Where a bank has been defrauded, the statute requires that proceedings be brought against the defrauding parties and any sums so recovered redound to the benefit of the stockholders. *In re Peoples State Bank,* 51 Mich App 421, 436; 215 NW2d 722 (1974). In the instant case, the receiver did bring such an action. Settlement was made with the stockholders and directors, the suits were dismissed *with prejudice,* and the money paid to the receiver. Additionally, the minority shareholders have received $650 per share from the settlement for $225,000 in the class action suit filed in federal court.[4] Finally, we note that the stock owned by the majority shareholders has been pledged to Continental, which had no part in the alleged wrongdoing of certain officers and shareholders and to which more is due and owing under the two loans made by it to Triple B than will be received by Continental under the pro rata distribution.

Affirmed. Costs to appellees.

---

[4] See fn 2, *supra.*