No. 24,602.

L. H. BOWEN et al., *Appellees,* v. THE BOWEN-ROMER FLOUR MILLS CORPORATION et al., *Appellants.*

SYLLABUS BY THE COURT.

CORPORATION—*Dissension and Deadlock in Board of Directors—Failure of Corporation to Function—Power of Court of Equity—Appointment of Receiver.* The stock of the corporation is held by two groups of stockholders, possessing equal voting strength. A member of one group purchased the stock of a director, which disqualified him, and left each group with two members of the board. Because of dissensions between the two groups of stockholders, the vacancy in the board of directors cannot be filled. Because of dissensions in the board of directors, it cannot function, and the corporation does not have a managing body such as the law requires. The directors representing one group were in possession of the corporate property and in control of the corporate business, and were taking advantage of the opportunity to oppress the members of the other group. *Held,* the district

court properly appointed a receiver for the corporation, and if it shall be found impossible for the corporation to achieve its purposes through its own proper agencies, the court may wind up its business and distribute its assets.

Appeal from Pawnee district court; ROSCOE H. WILSON, judge. Opinion filed July 7, 1923. Affirmed.

*G. W. Sawyer,* and *John C. King,* both of Liberal, for the appellants.

*T. H. Stanford, Charles Seacat, Lester G. Seacat,* all of Independence, *G. W. Finney,* and *Roscoe E. Peterson,* both of Larned, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal is taken from an order overruling a demurrer to a stockholder's petition praying for appointment of a receiver for a corporation and from an order appointing a receiver.

In June, 1921, L. H. Bowen purchased from R. Romer a one-half interest in a flour mill at Larned. The mill was not completed, and was not put into operation until October. In October the partners incorporated, and Romer executed to the corporation a bill of sale of the mill, elevator, machinery, equipment, office fixtures, supplies, business connections, good will, and flour brands and trade-marks. Romer was elected president. Bowen was elected vice president and treasurer, but he did not qualify as treasurer, and has handled none of the corporate funds. I. R. Romer, the president's son, was elected secretary. At the organization meeting the board of directors gave Romer charge of all grain bought and sold, and gave Bowen charge of milling grain, marketing flour, and purchasing bags. Bowen gave instructions to the miller relating to kinds and quality of flour to be manufactured and relating to other milling subjects, and then devoted himself to marketing the products of the mill, with headquarters at Independence, Kan. The Romers took charge of the mill and elevator, and have exclusive custody and control of the corporate property and funds and exclusive management of the corporate affairs, aside from procuring orders for flour. The corporation had insufficient working capital, and the Romers finally defeated Bowen's selling operations by cancellation of orders.

The mill is well located with reference to the wheat-producing district of the state, and has a capacity of 400 barrels of flour per day. In the period commencing October 1, 1921, and ending December 31, the mill was operated 19 days, with an average daily output of 387 barrels. In the period commencing December 31 and ending

March 31, 1922, it was operated 15¾ days, with an average daily output of 308 barrels. Between March 31 and May 31 it was operated 3½ days, and between May 31 and July 15, 2⅕ days. On July 15, 1922, the corporation had liabilities amounting to $14,126.83, consisting principally of bills payable and unpaid grain checks, and the net deficit of the enterprise on that date was $7,622.97. The corporation had no sales organization, and was simply supplying flour to local trade.

The petition traced the condition of the corporation to misconduct of the Romers, and charged them with various acts of usurpation and wrongdoing which may be conveniently comprehended under the term, breach of trust. The prayer was for immediate appointment of a receiver, for an accounting, for delivery of corporate assets wrongfully appropriated and withheld by the Romers, and ultimately for sale of the corporate property, payment of its debts, and distribution of the remaining assets.

The court heard much evidence, and caused the affairs of the corporation to be audited before appointing a receiver. The evidence was conflicting, and on this appeal the rule applicable to such cases must be observed. The following stipulation relating to material facts, submitted to the court at the hearing, is pertinent to the questions of law to be discussed:

"It is hereby stipulated and agreed by and between the parties to this action that R. Romer, I. R. Romer and W. H. Romer own respectively 380, 100 and 20 of the capital shares of stock known as the Bowen-Romer Flour Mills Corporation, a corporation.

"That plaintiffs L. H. Bowen, C. E. Bowen and J. W. M. Goff own respectively 380, 60 and 60 shares of the capital stock of said corporation.

. . . . . . . . . . . .

"That because of such distribution of the capital stock of the corporation and the dissension of the stockholders there exists a deadlock in the voting power of the stock of the corporation between the plaintiffs and the defendants, and that it would be useless to convene and hold a meeting of the stockholders.

"That the board of directors of the corporation at this time is composed of R. Romer and I. R. Romer, defendants, and L. H. Bowen and J. W. M. Goff, plaintiffs.

"That the office of the fifth member of the board of directors is vacant.

"That because of the dissensions among the members of the board of directors, there exists on the board of directors a deadlock, and it is useless and impractical to convene or hold a meeting of the board of directors of the corporation, and that the directors of the corporation are unable to select a suc-

cessor to fill the vacancy caused by the resignation of the fifth member of the board of directors.

"That that condition has existed from the 4th day of·March, 1922.

"It is further stipulated and agreed that on the 6th day of April, 1922, L. H. Bowen and J. W. M. Goff came to the city of Larned, at the request of the president and secretary of the corporation, to convene and hold a directors' meeting, said meeting to be held on a waiver of notice, but that it was agreed at that time that it was useless to convene and hold such meeting. That until this time there has been no further attempt to convene a directors' meeting of the stockholders of the corporation."

. The office of the fifth member is vacant because R. Romer purchased his stock, and thereby disqualified him.

Defendants say appointment of a receiver for a solvent corporation is a last-resort remedy, which is true. Defendants say further, appointment of a receiver is a remedy available only when other substantial relief is sought, and not as ultimate relief. The precise holding of this court upon that subject is as follows:

"With few exceptions the appointment of a receiver is an ancillary remedy which can only be obtained in an action in which other substantial equitable relief is sought, and such appointment is not made when that is the ultimate object of the action." (*City of Parsons v. Water Supply and Power Co.*, 104 Kan. 294, syl. ¶ 1, 178 Pac. 438.)

Finally, defendants say the statute relating to dissolution of corporations requires an action for that purpose to be brought in the name of the state, and a court of equity has no authority except by statute to forfeit franchises, dissolve the corporation, wind up its affairs, and distribute its assets. . The precise holding of this court on that subject is as follows:

"In the absence of express statutory authority the court has no authority, at the suit of an individual or minority stockholder, to dissolve a corporation, wind up its affairs and distribute its assets, and no such authority has been conferred in this state." (*Fees v. Bank*, 84 Kan. 828, syl. ¶ 2, 115 Pac. 563.)

If plaintiffs do not constitute a majority of the stockholders, neither are they a minority. Because the stockholders are in a deadlock, the vacancy in the board of directors cannot be filled. Because of the deadlock in the board, the corporation has no managing body, as the law requires. No lawfully authorized and directed step can be taken to achieve the corporate purposes. One group of belligerents has possession of the corporate property and control of its business affairs, and is taking advantage of the opportunity. to oppress the other group. . Must this situation continue until the period of corporate existence expires, or until Bowen, unable to

Bowen v. Flour Mills Corporation.

stand the financial strain, must sell his stock to Romer at Romer's price, and so be frozen out?

The legislature has authorized the appointment of a receiver in certain enumerated cases, and "In all other cases where receivers have heretofore been appointed by the usages of the courts of equity." (Gen. Stat. 1915, § 7164, subdiv. 6.)

Courts of equity came into existence for the purpose of affording such relief as justice and good conscience required, under the peculiar circumstances of the case. In some jurisdictions, instead of keeping up with social progress, equity has set and hardened. Its potency to meet new conditions has been emasculated, and frequently the caution to be displayed and the limitations to be observed in appointing receivers, loom so large that, as the Missouri court has observed, judicial hesitancy degenerates into judicial atrophy. (*Cantwell v. Lead Co.*, 199 Mo. 1.) In other jurisdictions a better view is taken, and the phrase, "by the usages of courts of equity," means according to the informing spirit of equity heretofore manifested in the appointment of receivers.

In the case of *Boothe v. Summit Coal Min. Co.*, 55 Wash. 167, the opinion reads:

"In the instant case, there is no control of the corporation by a board of trustees, sustained by a majority of the stock, although originally the present board may have been legally elected. In practical operation there is no deliberative board. R. J. Linden has as full, complete, and dictatorial control as did Oudin in the case cited, and although the corporation here involved is solvent, such a condition is inequitable and should not be permitted. It does violence to the elementary idea that a corporation is to be controlled by a governing board representing a majority of the stock. No majority is in control, nor can it obtain control. The deadlock is complete, absolute, to all appearances permanent, and R. J. Linden arbitrarily controls and manages the estate of Boothe, whose rights are, and should be, equal to his. . . .

"In *Gibbs v. Morgan*, supra [9 Idaho, 100], the supreme court of Idaho well said:

"'The early doctrine that the affairs of a corporation could not be inquired into except by permission of the attorney-general, and that courts of equity should not interfere with the power and authority of the directors of a corporation because that would result in its dissolution, has been modified to meet existing conditions. A large part of the business of the world is done through corporations, and it was held in *Columbia Athletic Club v. State*, 143 Ind. 98, 52 Am. St. Rep. 407, 40 N. E. 914, 28 L. R. A. 727, that the courts of equity should adapt their practice as far as possible to the existing state of society, and apply its jurisdiction to all those new cases which, from the progress daily making in the affairs of men, must continually arise, and should not from too strict an adherence to the forms and rules established under very

different circumstances, decline to administer justice and to enforce rights for which there is no other remedy.'

"Mr. Cook in § 746 of the 6th edition of his work on Corporations says: "'A receiver will not be appointed at the instance of a stockholder, even though mismanagement is charged, there being no fraud, and no danger of insolvency. There is a limit, however, to this rule. The powers of courts of equity to appoint receivers are very broad. Thus a court of equity has power to appoint a receiver where there is such fraud or dissension as to make it impossible for the corporation to carry on its business honestly and to the advantage of its stockholders. Such receivership, however, will be granted only in extreme cases and will be limited in time and extent, so far as the circumstances will permit.'

.   .   .   .   .   .   .   .   .   .   .   .   .

"While we recognize and adhere to the doctrine that a court of equity should hesitate before appointing a receiver over a solvent corporation, and should make such an appointment in exceptional instances only, yet we are constrained to hold that equity, good conscience, justice, and the rights of the parties demand such an appointment in this case." (pp. 177, 178, 179.)

Of course the district court cannot dissolve the corporation. There is a distinction, however, between forfeiting franchises and dissolving a corporation and closing up business affairs. (1 Morawetz on Private Corporations, § 282.) In equity, impossibility of attaining corporate objects is as good ground for putting an end to operations as inevitable insolvency (1 Morawetz, §§ 284, 285, and cases cited), and if it shall be found impossible for this corporation to function as a corporation through its own proper agencies, no reason is apparent why its business should not be wound up and the assets distributed.

The judgment of the district court is affirmed.