## HAMMOND v. HAMMOND.
### No. 14986.

Court of Civil Appeals of Texas.
Fort Worth.
Dec. 3, 1948.

Rehearing Denied Jan. 14, 1949.

See also 197 S.W.2d 502.

Simon, Wynn, Sanders & Jones and Kenneth H. Jones, all of Fort Worth, for appellant.

McLean & McLean and Denning Schattman, all of Fort Worth, for appellee.

**McDONALD, Chief Justice.**

J. C. Hammond, Inc., is a corporation organized under the laws of Delaware. It has its principal office and place of business in Tarrant County, Texas. Most of its properties, which consist of producing oil leases, oil payments, royalties, and unproven leases, are in Texas. According to findings of the judgment appealed from, its outstanding capital stock consists of 3,440 shares.

Prior to the year 1946 all but a small amount of its capital stock was owned by J. G. Hammond. In the early part of that year Hammond's wife sued him for divorce in Tarrant County. Shortly after the divorce suit was filed, C. R. Craig brought a suit against the corporation, and against Mr. and Mrs. Hammond. He alleged that he owned 104 shares of stock, that the corporation was in imminent danger of insolvency, and that the pendency of the divorce suit and some of the orders which had been issued therein had practically caused the corporation to cease doing business. He prayed that a receiver be appointed to take possession of its assets. Mrs. Hammond filed a pleading adopting the allegations of Craig's petition, and joined in his prayer for a receivership. The record before us does not show what pleadings, if any, Hammond filed in the suit at that time. There is nothing to show that he opposed the receivership, and the evidence is to the effect that he worked with the receiver in handling the affairs of the corporation.

Mrs. Hammond was granted a divorce in 1946. The court, in disposing of the community property, awarded to each of the parties one-half of the stock in the corporation which had theretofore stood in Hammond's name. Thereafter Hammond acquired by purchase 100 shares from Mrs. M. H. Horn.

In February of 1948 Craig, the plaintiff in the receivership suits filed a motion to be dismissed from the case, saying that he had transferred his stock to Gayle Hope Hammond. Gayle Hope Hammond is the minor daughter of Mr. and Mrs. J. G. Hammond.

Hammond sought to have the receivership dissolved, on grounds which we shall discuss later. Mrs. Hammond filed a pleading asking that the assets of the corporation be sold and that the proceeds of sale be divided among the stockholders, on grounds which we shall later discuss.

The court rendered judgment in a non-jury trial adjudging the number of shares held by each party to the suit, and ordering that the receiver sell the assets of the corporation and divide the proceeds among the stockholders after paying the expenses of the receivership and the debts of the corporation. Hammond has appealed, relying on four points of error. We shall discuss the contentions made under the points of error.

For one thing, appellant contends that the suit should have been dismissed and the receivership dissolved when the plaintiff Craig withdrew as plaintiff. This contention is overruled. "In determining whether to continue a receivership or discharge the receiver, the court will consider the rights and interests of all parties concerned, and will not grant an application for discharge merely because it is made by the party at whose instance the appointment was made * * *" 53 C.J. 87. See also Looney et al. v. Doss, Tex. Civ.App., 189 S.W.2d 207. Also, it is to be remembered that Mrs. Hammond filed a pleading adopting Craig's allegations and his prayer for receivership, and to some extent assumed the attitude of a co-plaintiff with him.

When the corporation was put into receivership its debts amounted to more than $70,000, and the record before us is sufficient to indicate that it was then in imminent danger of insolvency. At the time of the hearing in 1948, from which this appeal was taken, the indebtedness had been reduced to $15,000, according to the findings in the judgment. The evidence is to the effect that its assets were worth in excess of $100,000, and the court found that it was not insolvent, although it owed some debts that were long past due.

From the findings set out in the judgment, it is clear that the order to sell the assets of the corporation and divide the proceeds after payment of debts among the stockholders was based on the notion that there existed such bitterness between Mr. and Mrs. Hammond that the business of the corporation could not be carried on successfully. At the time of the judgment appealed from, according to the findings in it, Mrs. Hammond owned 1,618 shares, Mr. Hammond owned 1,718 shares, and the minor Gayle Hope Hammond owned the remaining 104 shares. We quote the following from the judgment:

"The court further finds that in the year leading up to the granting of the divorce to Mrs. Hammond and thereafter much bitterness has been engendered between these two parties by reason of which the court finds that, and due to the fact that the stock is almost equally divided between two parties, the orderly management and direction of the affairs of this corporation as such have been rendered impossible and the assets of the corporation would be endangered of being frittered away and wasted by indeterminable litigation and controversy; that it would be inequitable to compel the intervener, Mrs. Nell Hammond, to have the bulk of her share of the community estate continued in the control of J. G. Hammond, in whose judgment, ability and good faith she has no confidence."

■ "The general rule is that dissatisfaction of stockholders and dissensions and disagreements among stockholders and directors are not in themselves grounds for the appointment of a receiver of the corporate property." 45 Am.Jur. 47. "However, the courts have been comparatively liberal in the appointment of a receiver of a corporation, even though it is a solvent and going concern, where there are such dissensions among the stockholders, directors, or officers that the corporation cannot successfully carry on its corporate functions, imminent danger of loss of assets is threatened, and no other remedy appears to be adequate." 45 Am.Jur. 48.

■ The question before us is not exactly whether or not a receiver should be appointed for a solvent, going concern, because the corporation is and has been in receivership for more than two years, and the record before us amply shows grounds for the appointment of a receiver when the action was originally instituted. From the evidence in the record, it is apparent that the present financial condition of the corporation, considered alone, is such as to require, either now or at a fairly early date, a termination of the receivership. The condition of affairs which now exists, to wit, a division of the stock ownership almost equally between two individuals who, it is claimed, are so hostile toward each other that their dissensions will prevent a profitable operation of the business of the corporation, did not exist prior to the receivership. The question facing the trial court was whether to discharge the receiver and return possession and management of the business to the officers of the corporation, or order the receiver to sell the assets and divide the proceeds of sale among the stockholders after paying the expenses of the receivership and the debts of the corporation.

■ It is undoubtedly the general rule that a court of equity will not, in the absence of statutory authority, take jurisdiction to dissolve or wind up the affairs of a corporation. The following declaration from People's Inv. Co. v. Crawford, Tex. Civ.App., 45 S.W. 738, 739, has often been quoted, but later cases, both in Texas and in other jurisdictions, have not followed a rule as strict as that indicated in the quotation: "A court of equity has no authority, unless conferred by statute, to wind up the affairs of a corporation at the

suit of a stockholder, except, possibly, where the object of a corporation has become manifestly impossible of attainment. There is no statute in this state authorizing a court of equity to wind up the affairs of a corporation at the suit of a stockholder."

A less .strict view is indicated in such later cases as Berkshire Petroleum Corporation v. Moore, Tex.Civ.App., 268 S.W. 484; and Prairie Lea Production Co. v. Tiller, Tex.Civ.App., 286 S.W. 638.

An exhaustive discussion of the power of a court of equity to wind up the affairs of a corporation, independent of statutory authority, is found in Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co., 4 Cir., 64 F.2d 817, 91 A.L.R. 648. The opinion recognizes that ordinarily a court of equity will not wind up the affairs of a solvent corporation at the suit of minority stockholders, but declares, citing authorities, that the general rule is subject to exceptions. The opinion quotes the statement of Mr. Justice Brewer, in Toledo, A. A. & N. M. R. Co. v. Pennsylvania Co., C.C., 54 F. 746, 751, 19 L.R.A. 395: "I believe most thoroughly that the powers of a court of equity are as vast, and its processes and procedure as elastic, as all the changing emergencies of increasingly complex business relations and the protection of rights can demand." [64 F.2d 825.]

The inter-corporate transactions under review in the Tower Hill case were most complicated. In declaring that the court's equity powers were sufficient to meet the demands of justice, the court said: "Tangled and intricate as is this Gordian knot surely the sword of justice wielded by the puissant arm of the Chancellor can cut it."

In Bowen v. Bowen-Romer Flour Mills Corp., 114 Kan. 95, 217 P. 301, 43 A.L.R. 238, will be found an excellent discussion, and a citation of pertinent authorities, of the modification by later decisions of the strict rule announced in the earlier cases.

Citation of other cases may be found in annotations in 43 A.L.R. 242, 284; 61 A.L.R. 1212, 1216; and 91 A.L.R. 665, 668.

■ Our conclusion, after considering many of the authorities referred to, is that a court of equity may properly take juris-diction to wind up the affairs of a corporation and sell and distribute its assets at the suit of a minority stockholder on the ground of dissensions among the stockholders, but that it is only an extremely aggravated condition of affairs that will warrant such drastic action, and that the court will follow such a procedure only when it reasonably appears that the dissensions are of such nature as to imperil the business of the corporation to a serious extent and that there is no reasonable likelihood of protecting the rights of the minority stockholder by some method short of winding up the affairs of the corporation.

A question has arisen in our minds that is not suggested in the pleadings or the briefs of the parties. The corporation involved is a foreign corporation, and owns some properties in other states. The nature of the properties in other states is not entirely clear from the record, but there is enough to indicate that at least some of them may be interests in real as distinguished from personal property.

■ "As a general rule, courts will not take jurisdiction of the internal affairs of a foreign corporation * * *" 23 Am. Jur. 424. "* * * the reason of the rule against assuming jurisdiction of an action involving the internal affairs of a foreign corporation is the impossibility of enforcing the decree or order." Id. 425. It is the general rule that a court will not appoint a general receiver of a foreign corporation or a receiver to wind up its affairs, but it may appoint a receiver in a proper case to take possession of property within the state of the appointing court. 45 Am. Jur. 65, 66. Generally it is held that a court has no jurisdiction to appoint a receiver to liquidate or wind up the affairs of a foreign corporation. But such jurisdiction has been exercised where all or a substantial part of the assets of the foreign corporation were within the jurisdiction of the court. The distinction is made, in such cases, between the dissolution of the corporation, and the winding up of the business of the corporation within the state. In the case of a domestic corporation, and likewise in the case of a foreign corporation having most or all of its assets within

the state of the appointing court, the distinction might as a practical matter be only a technical one, but it is recognized in some of the decisions. For example, see the Tower Hill and Bowen cases, cited supra.

In 45 Am.Jur. 150 it is said that a receivership, brought about by dissensions in the management of the corporation, should not be continued longer than the dissensions exist, and it is suggested that a court might call the parties together and set a reasonable time for the settlement of the dissensions, at the conclusion of which time, in the absence of a settlement of the dissensions, the court might order the assets sold and the proceeds distributed.

The divorce suit was tried before the same court that appointed the receiver and heard the application for termination of the receivership. Whatever of bitterness between the parties that may have been shown by the proceedings in the divorce suit is not brought into this record, so the only evidence bearing on such matter before us is that found in the statement of facts filed in this court on this appeal. We have in this record proof that the court in the divorce suit rendered judgment dividing the stock equally between the parties, and we know from the records of our court that Mrs. Hammond appealed from that decree but did not complain of the fact that the corporate stock was divided between them. Hammond v. Hammond, Tex.Civ.App., 197 S.W.2d 502. There is now, however, this difference in the situations of the respective parties. Mr. Hammond has purchased an additional 100 shares of stock from another stockholder, and from the findings in the judgment in the present case, and from statements made in the briefs of the parties, it appears that both the court and the parties have labored under the belief that Mr. Hammond would thus have control of the corporation and that Mrs. Hammond would be in the position of a minority stockholder. We observe from the record that the minor Gayle Hope Hammond owns 104 shares. Control of the corporation may turn on the question of who acquires the right to vote her stock.

We have carefully examined Mrs. Hammond's testimony in the record before us. Her testimony is the only evidence before us regarding dissensions between her and Mr. Hammond as to the management of the corporation. The most that can be made of it is that she distrusts Mr. Hammond, and does not wish him, presumably as the majority stockholder, to have the management of her interest in the corporation. The record does not show whether there has been a stockholders' meeting in anticipation of the termination of the receivership, or an election of officers and directors. For all we know, Mrs. Hammond may turn out to be in control of the corporation. There is testimony enough to show that the corporation went into debt to the extent of $70,000 under Mr. Hammond's management, but there are no facts in the record to show whether or not such indebtedness was the result of inefficient or corrupt management on his part. Also, the judgment does not appear to be based on anything other than the fact of dissensions between Mr. and Mrs. Hammond.

 It is our belief, and we so hold, that the facts before us are not sufficient to support the judgment of the trial court. It is further our belief, and we so hold, that the trial court has authority, upon proper proof, to order a sale of such assets as are within this state and a distribution of the proceeds of sale among the stockholders, but that such should not be done until it has been proven that reasonable efforts have been made by the stockholders to settle their differences with respect to the management of the corporation, and not then unless it reasonably appears to the court from the evidence that the dissensions between them are of such nature as seriously threaten to impair the successful operation of the corporation. In any event, the court has discretion not to terminate the receivership until the debts have been paid. or until it is made to appear to him that they will be paid within such time as to the court may seem proper; and it is further within his right not to terminate the receivership until it is made to appear to him that the stockholders have elected directors and the directors have elected officers to accept transfer of the assets from the receiver.

Reversed and remanded.