Gary CASE, Plaintiff and Appellant,

v.

Craig MURDOCK, Nancy Murdock, and Sandra McCroden, Defendants and Appellants,

and

Bret Hamm and Angel Hamm, Defendants,

and

Hickok's, Inc., Defendant and Appellee.

Maxine B. CASE and Judith R. Sides, Plaintiffs,

v.

Craig MURDOCK, Nancy Murdock, and Sandra McCroden, Defendants and Appellants,

and

Bret Hamm and Angel Hamm, Defendants,

and

Hickok's, Inc., Defendant and Appellee.

Nos. 18503, 18505 and 18506.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1994.

Reassigned Dec. 15, 1994.

Decided Feb. 22, 1995.

Rehearing Granted March 30, 1995.

Robert F. LaFleur of LaFleur, LaFleur and LaFleur, Rapid City, for appellant Gary Case.

Richard A. Pluimer of Carr and Pluimer, Belle Fourche, for appellants Murdocks & McCroden.

Mark F. Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellee, Hickok's.

SABERS, Justice (On reassignment).

In this consolidated appeal, Gary Case appeals a jury verdict in his favor on breach of and tortious interference with his employment contract. Specifically, Case claims the trial court erred in not submitting the issue of punitive damages to the jury on his tortious interference claim and in limiting his damages to loss of wages. Craig and Nancy Murdock, Sandra McCroden, individually and derivatively as shareholders of Hickok's, a South Dakota corporation, appeal the trial court's failure to instruct the jury on issues regarding Case's employment. Murdocks and McCroden also appeal the trial court's decision to appoint a litigation receiver to decide a settlement offer made to the corporation resulting from an earlier lawsuit find-

ing two of Hickok's officers in breach of their fiduciary duty. Because this issue is determinative and must be resolved first, we reverse and remand the entire case to the trial court for new trials.

### FACTS

This appeal involves Hickok's, a closely-held gaming corporation in Deadwood, South Dakota. Hickok's has been involved in litigation between the parties to this appeal for four of the five years it has been in existence.[1] In 1992, we decided a case involving Hickok's and these same parties. *Case v. Murdock*, 488 N.W.2d 885 (S.D.1992) (*Case v. Murdock I*). A brief review of that case is necessary to an understanding of this appeal.

In *Case v. Murdock I*, two of Hickok's corporate officers and directors, Maxine Case and Judith Sides, brought suit against Hickok's claiming entitlement to corporate stock. 488 N.W.2d at 886. Hickok's countersued claiming breach of fiduciary duty by Case and Sides by their purchase of a building for themselves which was leased to Hickok's. The jury determined the two officers breached their fiduciary duty and found for the corporation, awarding punitive damages but

no compensatory damages. The trial court set aside the punitive damage verdict and ordered a new trial on all damage claims, because "the jury's actions, in failing to award compensatory damages to Hickok's when awarding punitive damages was, 'facially inconsistent.'" *Case v. Murdock I*, 488 N.W.2d at 889. The court then awarded judgment in favor of Maxine Case on the stock issue. We affirmed the trial court on all issues and remanded for trial. *Id.* at 887.

Following our affirmance and prior to a new trial on Hickok's compensatory damage claims, Case and Sides made a settlement offer to the corporation. The trial court appointed a receiver, under SDCL 21–21–3, to consider the offer "and all other litigation in which the corporation and its shareholders are involved" following the court's conclusion that "conflicts and dissension" existing on Hickok's board of directors left the board unable to exercise its corporate function regarding these matters. The trial court's appointment of the receiver and subsequent acceptance of the receiver's decision regarding the settlement offer is the key issue in this consolidated appeal as it must first be correctly resolved before the other issue.[2]

---

1. The litigation involved claims and counterclaims among the corporation's directors and stockholders, most of whom are related by blood or marriage. The current directors are Maxine Case, Judith Sides, Bret Hamm, Sandra McCroden, and Craig Murdock. Maxine Case is Gary Case's mother and Bret Hamm's grandmother. She is also Sandra McCroden's aunt. Gary Case is Judith Sides' husband. Other involved parties are Bret Hamm's wife, Angel, and Craig Murdock's wife, Nancy. Although all of these parties have been involved on the trial court level with counsel, some are not involved in this appeal.

2. The other issue on this appeal involves Gary Case's termination as general manager of Hickok's. Briefly, those facts are:

   Gary Case was hired by Hickok's in January 1990 to act as general manager for the corporation for a period of one year. His monthly salary was $1,700. Case had been one of the incorporators and original directors of Hickok's, along with Maxine Case, Judith Sides, and Sandra McCroden. Case had been instrumental in getting the corporation and the casino itself started, handling such matters as initial capitalization, equipment purchases, layout and logo designs, construction work, and licensing. Although the other three original directors were also shareholders, Case was not. Case was involved in

divorce proceedings and, pursuant to an oral agreement with at least some of the directors, would purchase stock and become a shareholder in October of 1990, after his divorce became final. At Hickok's March 1990 annual stockholders' and directors' meeting, however, it was voted and approved that all Hickok's directors would also be shareholders. Since Gary Case was not a shareholder at that time, it followed that he was no longer eligible to be a director of the corporation. At the March meeting Case's title as general manager was also changed to day shift boss but with no change in salary. Although it appears that Case agreed to these changes at the meeting, he felt differently by the next morning and shared his feelings with at least one of the directors, Sandra McCroden. Following the board's refusal on May 10, 1990 of Case's offer to purchase stock in the corporation, Case tendered his resignation.

   Gary Case sued the corporation claiming breach of his employment contract. A jury, by special interrogatories, found 1) Hickok's breached its employment contract with Case; 2) Sandra McCroden, Bret and Angel Hamm, and Craig and Nancy Murdock tortiously interfered with Case's employment contract with Hickok's; and 3) Case was entitled to purchase stock in the corporation.

   Following the trial court's filing of the jury verdict, Case filed a motion for a new trial

## THE TRIAL COURT WAS WITHOUT AUTHORITY TO APPOINT A LITIGATION RECEIVER FOR THE PURPOSE OF DECIDING A CORPORATION'S CLAIM FOR DAMAGES AGAINST DIRECTORS DETERMINED TO HAVE BREACHED THEIR FIDUCIARY DUTY AS A MATTER OF LAW.

Under Article VI, § 20 of the South Dakota Constitution, "[a]ll courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." This constitutional provision provides that courts have the authority to adjudicate and that individuals have the right to remedy by due course of law in South Dakota courts. Nowhere under the South Dakota Constitution nor the statutes of the State of South Dakota are receivers granted judicial authority to act in place of a court.

Under South Dakota law, there are a number of statutory provisions authorizing the appointment of a receiver. See SDCL 21–21–1 to 21–21–5 and SDCL 47–26–29. "A statute conferring the power to appoint a receiver must be strictly construed[.]" 19 C.J.S. *Corporations,* § 756. None of these sections provide an arguable basis, under the facts of this case, for a "litigation" receiver. "[T]he court cannot confer upon the receiver other or greater authority than is conferred by these Code provisions." *Hogg's Receiver v. Hogg, et. al.,* 265 Ky. 656, 97 S.W.2d 582, 583 (1936).

In fact, the whole concept of the receivership is contrary to the use of that office in this case. Receiverships are intended to protect "property, funds, or proceeds ... where it is shown that the property or fund is in danger of being lost, removed, or materially injured[.]" SDCL 21–21–1; *see* 65 Am. Jur.2d, Receivers, § 3. Even in cases where a receiver is empowered to settle creditors'

claims, he must "present[ ] all factual matters and all legal questions ... to the court with *ample opportunity for the claimants and objectors to argue the issues* [before the court]." *In Re E.C. Warner Co.,* 232 Minn. 207, 45 N.W.2d 388, 394 (1950) (emphasis added). All issues must be "thoroughly litigated" and there must be an adjudication on the merits by the trial court. *Id.*

SDCL chapter 21–21 does not grant the power to appoint a receiver to usurp the right of parties to a trial on the merits. 65 Am.Jur.2d, *Receivers,* § 3 provides in part:

> The appointment of a receiver certainly is not made for the purpose of destroying the rights of persons, but rather, that their rights may be made more secure.

The trial court mistakenly relied upon SDCL 21–21–3 as authority to appoint a litigation receiver. It merely provides:

> A receiver may be appointed by the court in which an action is pending, or by the judge thereof, in the cases where a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights; or is unable to exercise its corporate functions because of continued dissen[s]ion between or neglect by its stockholders, directors and officers.

SDCL 21–21–3 governs situations where a receiver may be appointed but does not grant any powers to a receiver beyond those listed in SDCL chapter 21–21. *Id.* Under SDCL 21–21–5, a receiver may be appointed for "all other cases where receivers have heretofore been appointed by the usages of courts of equity." There is no indication that the use of a "litigation" receiver has ever been allowed under these circumstances. *See* 65 Am.Jur.2d, *Receivers,* §§ 1–489; 4 J.N. Pomeroy, *A Treatise on Equity Jurisprudence,* § 1334 (5th ed., 1941). "The appointment of a receiver during the pendency of a suit does not determine any rights or title of the liti-

---

against McCroden, Hamms and Murdocks on grounds that the trial court erred in limiting the measure of damages to Case's lost wages and in not allowing the jury to consider the issue of punitive damages. *McCroden, Hamms, Murdocks,* and *Hickok's* moved for a new trial based on insufficient evidence to support the jury's verdict and claiming errors of law in the trial

court's instructions to the jury. Both motions were denied and this appeal follows.

Because determination of Case's entitlement to purchase stock in the corporation should occur only after *the determination of the breach of* fiduciary duty question, we remand these issues for trial in appropriate order on appropriate instructions.

gant parties[.]" *Id.* at § 1336. The receiver does not act for the benefit of one party or another but impartially for the benefit of the court. *Id.*

SDCL 21–21–9 provides:

**21–21–9. Powers of receiver in collection and management of property.**

The receiver has, under the control of the court, power to bring and defend actions in his own name as receiver, to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize.

It is obvious that the powers of a receiver of a corporation under this section and in this chapter are limited to control over its *own* property. No where is a receiver of a corporation given power to control the property of stockholders. Even more so, no power is given to hear and determine conflicting claims among its officers, directors and stockholders. That is the essential breach of authority in this case. Even the trial court judge would not have the power to decide conflicting claims among stockholders in the absence of a trial, so he cannot appoint a litigation receiver to do what he cannot do. SDCL 21–21–9.

The trial court improperly delegated judicial authority to a receiver and abused its discretion by accepting the settlement and dismissal of the case without sufficient knowledge of the settlement agreement. "Judicial power must be exercised by the courts and cannot be delegated or surrendered by a court or judge to a nonjudicial body or person, even with the consent of the parties[.]" 16 Am.Jur.2d, *Constitutional Law,* § 334.

The trial court's order gave the receiver authority to act as judge and jury. Through the actions of the receiver, Murdocks and McCroden have been denied any and all derivative rights to trial on the issue of damages. The trial court would not have had authority to dictate the settlement of a case triable to a jury or factfinder under any circumstances. Nevertheless, this trial court granted authority, that it did not possess, to a litigation receiver to dictate settlement without direction or accountability.

We have no alternative but to reverse and remand this entire case to the trial court for new trials based on proper jury instructions.

MILLER, C.J., and KONENKAMP, J., concur.

AMUNDSON, J., concurs specially.

WUEST, Retired J., dissents.

AMUNDSON, Justice (concurring specially).

This record is void of any evidence that Hickok's was "insolvent, or is in imminent danger of insolvency, or . . . unable to exercise its corporate functions because of continual dissention . . ." as required by SDCL 21–21–3 when a trial court is considering whether or not to appoint a receiver. This case certainly shows a closely held corporation's board of directors who, due to their own personal interests, are incapable of settling the numerous lawsuits involving the corporation, individual directors, and shareholders. However, notwithstanding this litigation, Hickok's continues to function in the daily operation of the gaming business. The fact that these individuals have, due to their own personal interests, deadlocked the corporation from settling these lawsuits does not, in my opinion, constitute a sufficient basis for the trial court to appoint a litigation receiver.

The Indiana Court of Appeals stated in *Crippen Printing Corp. v. Abel,* 441 N.E.2d 1002, 1007 (Ind.App.1982), as follows:

We hold this appointment of a receiver is appropriate only where there is dissention between sets of stockholders owning equal amounts of stock such that there is a present danger to investors consisting of a serious suspension of or interference with the conduct of the business resulting in an imminent danger of dissipation of the corporate assets.

If, in fact, there was imminent danger of Hickok's assets being dissipated so that it was on the brink of insolvency, I am sure such facts could have easily been submitted for the trial court's consideration. Without such evidence, I would hold that it was inap-

propriate to appoint the receiver in this case. The statute does not provide for appointment of a receiver as a substitute for resolving disputes between the owners of a corporation in lieu of the parties' right to have a jury decide the underlying legal controversy.

These litigious parties are obviously expending money which otherwise could be used to pay dividends.

Still, unless the corporation cannot pay its bills, the courts should not be used as a vehicle to protect individuals from exercising what appears to be unsound business acumen.

WUEST, Retired Justice (dissenting).

The trial court appointed a receiver to consider the settlement offer made by two of Hickok's directors pending before the corporation and also to consider "all other litigation in which the corporation and its shareholders are involved." The appointment was made under the authority of SDCL 21-21-3 which provides, in pertinent part:

[a] receiver may be appointed by the court in which an action is pending, or by the judge thereof, in the cases where a corporation ... is unable to exercise its corporate functions because of continued dissention between or neglect by its stockholders, directors and officers.

Because I believe this statute is broad enough to include the appointment of a receiver under the circumstances presented in this case, I dissent.

A settlement offer had been made to the corporation by Judith Sides and Maxine Case stemming from the breach of fiduciary duty judgment against them. Hickok's board of directors, consisting of Case, Sides, Bret Hamm, Sandra McCroden, and Craig Murdock, met May 10, 1993 to discuss resolution of the corporation's litigation. Acknowledging that every one of Hickok's board of directors had a conflict of interest in reviewing the proposed settlement offer, the corporation voted 3-2 to allow the offer to be reviewed by an independent litigation committee. Hickok's explained this decision of the corporation to the court in a hearing on May 13, 1993. The trial court, stating the stockholders and the present members of the board of directors should not be deciding the question, appointed a litigation receiver to consider the settlement offer.

In setting forth grounds for its appointment of the receiver, the trial court specifically noted "because of the conflicts and dissension which exists on the Board of Directors of Hickok's it is unable to exercise its corporate functions with respect to the consideration of said settlement offer and all other litigation in which the corporation and its shareholders are involved." Webster's Dictionary defines "dissension" as "disagreement, especially partisan and contentious quarreling," Webster's New Collegiate Dictionary 331 (1973), and defines "contentious" as "exhibiting an often perverse and wearisome tendency to quarrels and disputes." *Id.* at 245. The trial court found the definition of "continued dissension" had been met by these parties. The "corporate function" involved here was Hickok's continued entanglement in protracted litigation between and among its own directors, officers, and shareholders.

Murdocks and McCroden claim no factual basis existed for the trial court's appointment of a receiver. However, the record is replete with examples of the continued quarreling and disputes among the parties to this appeal. As evidenced by the settled record and previously acknowledged by the majority opinion, this closely-held corporation has been involved in litigation between these same parties, Hickok's directors, officers, and shareholders, for four of the five years it has been incorporated. At a hearing held October 1, 1993 to receive Murdocks' and McCroden's objections to the receiver's acceptance of a settlement offer for the corporation, the trial court again stressed its reason for appointing a receiver for the limited purpose of deciding matters involved in Hickok's ongoing litigation. The court stated there was no one to act independently for the corporation involving its litigation and there was continued deception existing between the stockholders, directors, and officers. At the conclusion of this hearing, the trial court approved the settlement, finding the receiver

had acted appropriately on behalf of the corporation.

"It is to be noted that a close corporation is one in which management and ownership are 'substantially identical to the extent that it is unrealistic to believe that the judgment of the directors will be independent of that of the stockholders.'" *Thisted v. Tower Management Corp.*, 147 Mont. 1, 409 P.2d 813, 820 (1966). O'Neal's treatise on Close Corporations also provides insight to understanding the interrelationships within a close corporation:

'There usually is no division between the shareholder-owners and the director-managers. Either the stockholders themselves are the directors, or they so closely dominate and control the directors that the latter are in fact little more than their agents. Frequently the shareholders go even further, and besides being directors are also the officers and executives of the company. In any event, either through serving as the directors and officers themselves or through detailed provisions in the charter, by-laws, or stockholder agreements, the shareholders personally manage and control the business directly or else perform these functions through others who in fact simply act as their agents.'

O'Neal & Thompson, O'Neal's Close Corporations § 1.07, at 28 n. 1 (3d ed. 1994) (quoting Kramer, Foreward to Symposium Issue on "The Close Corporation," 18 Law & Contemp.Probs. 433 (1953)). The trial court specifically found, and based its decision to appoint the receiver upon, the absence of independence and objectivity on behalf of the corporation in considering any pending settlement offers, and the continued deception and dissension among the parties who are at once shareholders and corporate directors and officers.

"[T]he propriety of appointing a receiver for a corporation is a matter resting 'largely' within the sound judicial discretion of the trial court.... Unless it appears that there has been a clear abuse of such discretion, an appellate court will not interfere with the exercise of that discretionary power, even though it is settled that the power is not arbitrary nor absolute, and is at all times subject to review." Fletcher Cyclopedia Corporations, Receivers, § 7697 (1989 rev. vol.). "[C]aution must be exercised to see that there is a good ground for a receiver and a necessity exists justifying an appointment. When this is determined in favor of a receivership, the courts should not, and do not, hesitate to appoint a receiver." *Id.* The Supreme Court of Iowa, acknowledging the receiver's scope of authority, has stated "[t]he powers conferred upon the receiver by virtue of the terms of the statute are not necessarily a limitation upon the powers that could be conferred upon a general receiver by the court of equity making the appointment." *Bierma v. Ellis*, 212 Iowa 366, 236 N.W. 402, 404 (1931). Courts have vested receivers with the authority to initiate lawsuits (*Woodliff v. Frechette*, 254 Mich. 328, 236 N.W. 799, 800 (1931); *Ross v. Long*, 219 Iowa 471, 258 N.W. 94, 95 (1934); *Luikart v. Flannigan*, 130 Neb. 908, 267 N.W. 169, 169 (1936)), and to settle claims by compromise (*Ellis v. Citizens' Bank of Carlisle*, 218 Iowa 750, 251 N.W. 744, 747 (1933); *In re E.C. Warner Co.*, 232 Minn. 207, 45 N.W.2d 388, 394 (1950); *In re Briggs*, 51 Mich.App. 421, 215 N.W.2d 722, 729 (1974)).

In *Senger v. Senger*, 308 N.W.2d 395, 397 (S.D.1981), we stated "'the appointing, or the refusing to appoint, a receiver, is largely a matter of the sound judicial discretion of the trial court.' This Court will not interfere with the trial court's decision in this regard unless a clear abuse of discretion is shown." (citing *Brown v. Brown*, 46 S.D. 469, 470–71, 193 N.W. 596, 596 (1923)). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by and clearly against, reason and evidence." *Bakker v. Irvine*, 519 N.W.2d 41, 45 (S.D.1994); *In re E.D.J.*, 499 N.W.2d 130, 133 (S.D.1993); *Cody v. Edward D. Jones & Co.*, 502 N.W.2d 558, 565 (S.D.1993); *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981). The test when reviewing matters involving judicial discretion is "'whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion[]'" *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D.1994); *Dartt v. Berghorst*, 484 N.W.2d 891, 894 (S.D.1992);

*Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D. 1991), not "whether the judges of this court would have made an original like ruling." *Fox v. Fox,* 467 N.W.2d 762, 766 n. (S.D. 1991) (citing *In re Donahue,* 464 N.W.2d 393, 395 (S.D.1990)). "Only a 'clear' abuse of discretion warrants reversal." *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984) (citing *Rykhus v. Rykhus,* 319 N.W.2d 167, 170 (S.D.1982)).

In *Brown,* this court upheld the circuit court's appointment of a receiver to take charge of certain real and personal property pending a divorce action. In our affirmance, we noted the attitude of the parties "was, and is, fraught with much hostility" and there had been a significant amount of controversy regarding ownership of the property. *Brown,* 193 N.W. at 596. We stated "[t]he general rule is that the action of the court must be governed by sound and judicial discretion, *taking into account all the circumstances of the case,* exercised for the purpose of promoting the ends of justice and protecting the rights of all parties interested in the controversy and subject-matter...." *Id.* at 597 (quoting 23 R.C.L. § 4) (emphasis added).

Similarly, the Texas Court of Civil Appeals acknowledged with approval the appointment and continuance of a receivership that had been ongoing for more than two years for a solvent corporation where stock ownership was almost equally divided between two bitterly divorcing parties. The trial court stated corporation assets were in danger of "being frittered away and wasted by indeterminable litigation and controversy." *Hammond v. Hammond,* 216 S.W.2d 630, 632 (Tex.Civ. App.1948). The appellate court noted:

'[t]he general rule is that dissatisfaction of stockholders and dissensions and disagreements among stockholders and directors are not in themselves grounds for the appointment of a receiver of the corporate property. However, the courts have been comparatively liberal in the appointment of a receiver of a corporation, even though it is a solvent and going concern, where there are such dissensions among the stockholders, directors, or officers that the corporation cannot successfully carry on its corporate functions, imminent danger of loss of assets is threatened, and no other remedy appears to be adequate.'

*Hammond,* 216 S.W.2d at 632 (quoting 48 Am.Jur. §§ 47–48). *See also,* 65 Am.Jur.2d *Receivers* § 61 (1972). More recently, this same court, reviewing a case where the parties had had "numerous disputes" and "lingering hard feelings," stated the appointment of a receiver for a corporation was not void due to the existence of other adequate remedies, where such remedies would not have been as prompt, complete, practical, and efficient as the appointment of a receiver. *Citizens Bldg., Inc. v. Azios,* 590 S.W.2d 569, 574 (Tex.Civ.App.1979).

Finally, it must be noted that here, the corporation itself consented to the appointment of a litigation receiver. "[W]here there is consent to the appointment of a receiver, any challenge thereafter to the appointment is waived." *Norwest Bank Des Moines v. Bruett,* 432 N.W.2d 711, 713 (Iowa App.1988). *See also Minnesota Hotel Co. v. ROSA Dev. Co.,* 495 N.W.2d 888, 892 (Minn.App.1993) (the statutory requirements for appointment of a receiver need not be met when the parties contractually agree otherwise). Consent by the corporation was provided during Hickok's board of directors' meeting May 10, 1993 when the corporation voted 3–2 to allow an independent committee to review the settlement offer "to see if the offer was reasonable and fair, and if it would be accepted by the corporation."

In short, Case and Sides had been found in breach of their fiduciary duty owed to the corporation, Hickok's. *Case v. Murdock,* 488 N.W.2d 885, 891 (S.D.1992). Prior to trial on the damages issue, Case and Sides made an offer of settlement to Hickok's. Hickok's board of directors met May 10 and approved the appointment of an independent review committee to review the offer. Hickok's explained its action to the trial court. The two board members who were opposed to the appointment argued their position to the court. The trial court found, due to continued dissension and deception by Hickok's board members that no member of the board was able to independently review, accept, or reject the settlement offer made to the cor-

poration. The trial court then appointed an independent receiver, to act on the board's behalf in considering the offer as well as other litigation involving the corporation and its shareholders.

Under the facts of this case, I can find no abuse of the trial court's discretion in appointing a receiver for the limited purpose of considering the settlement offer and other aspects of the corporation's litigation. Further, the trial court was within its statutory grant of authority in doing so. Because both factual and legal bases exist for the appointment of a receiver in this case, I dissent.